Filed 7/10/13

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| CITY OF DANA POINT,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CALIFORNIA COASTAL COMMISSION,<br><br>    Defendant and Appellant;<br><br>HEADLANDS RESERVE LLC,<br><br>    Real Party in Interest and Respondent. | D060260<br><br><br>(Super. Ct. No.<br>37-2010-00099827-CU-WM-CTL) |
| SURFRIDER FOUNDATION,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CITY OF DANA POINT,<br><br>    Defendant and Appellant;<br><br>HEADLANDS RESERVE LLC,<br><br>    Real Party in Interest and Appellant. | D060369<br><br><br>(Super. Ct. No.<br>37-2010-00099878-CU-WM-CTL)<br><br><br>ORDER DENYING REHEARING<br>AND MODIFYING OPINION<br><br><br>[No Change in Judgment] |

THE COURT:

The petitions for rehearing are denied. Justices O'Rourke and Aaron concur in the denial. Justice Benke would grant.

The opinion filed herein on June 17, 2013, is modified as follows:

1. On page 7 of the dissenting opinion, delete the third sentence of the first full paragraph.

2. On page 7 of the dissenting opinion, insert the following new paragraph after the first full paragraph:

> There of course can be no serious question that the majority opinion in fact gives the Commission power to determine the validity of nuisance ordinances. Section III.A.4. of the majority opinion specifically states that on remand the trial court is directed to determine if the City was acting within the scope of section 30005, subdivision (b) in adopting its nuisance ordinance, and "[*i*]*n making this determination, the trial court shall decide whether the City's enactment of the Nuisance Abatement Ordinance was a pretext for avoiding the requirements of its local coastal program and, if the court determines that there is an actual nuisance, whether the development mandated by the Nuisance Abatement Ordinance exceeds the amount necessary to abate that nuisance.*" (Maj. opn. *ante*, at p. 53, italics added.) The majority opinion goes on to say: "If the court determines that the *City has established* that it did *not* enact the ordinance as a pretext . . . ." (Maj. opn. *ante*, at p. 54, first italics added, second italics in original.) Nothing on the face of the Coastal Act places such a burden on a municipality, and important principles of municipal and constitutional law suggest that any burden with respect to the validity of a municipal nuisance ordinance rests with the Commission, not the municipality.[1]

---

[1] If, of course, the majority does not mean to give such power over the validity of ordinances to the Commission, for the guidance of the Commission and municipalities within the geographic jurisdiction of the

2

There is no change in the judgment.

_____
BENKE, Acting P. J.

Copies to:  All parties

---

Commission, the majority should more fully articulate what power
municipalities continue to have over the enactment and enforcement of
nuisance ordinances.

Filed 6/17/13 (unmodified version)

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| CITY OF DANA POINT, | D060260 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 37-2010-00099827-CU-WM-CTL) |
| CALIFORNIA COASTAL COMMISSION, | |
| Defendant and Appellant; | |
| HEADLANDS RESERVE LLC, | |
| Real Party in Interest and Respondent. | |
| SURFRIDER FOUNDATION, | D060369 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 37-2010-00099878-CU-WM-CTL) |
| CITY OF DANA POINT, | |
| Defendant and Appellant; | |
| HEADLANDS RESERVE LLC, | |
| Real Party in Interest and Appellant. | |

APPEALS from judgments of the Superior Court of San Diego County, Joan M. Lewis, Judge. As to No. D060260, affirmed in part; reversed in part; remanded with directions; as to No. D060369, held in abeyance.

Kamala D. Harris, Attorney General, John A. Sauerenman, Senior Assistant Attorney General, Jamee Jordan Patterson, Deputy Attorney General for Defendant and Appellant California Coastal Commission in No. D060260.

Rutan and Tucker, Anthony Patrick Munoz, John A. Ramirez and Jennifer J. Farrell for Plaintiff and Respondent in No. D060260, and for Defendant and Appellant in No. D060369.

Manatt Phelps & Phillips, George Michael Soneff, Michael M. Berger and Benjamin G. Shatz for Real Party in Interest and Respondent in No. D060260, and Real Party in Interest and Appellant in No. D060369.

McDermott Will & Emery, Jennifer N. Kalnins-Temple, Daniel R. Foster, David M. Beckwith; Angela Tiffany Howe for Plaintiff and Respondent in No. D060369.

I.

INTRODUCTION

These appeals stem from two consolidated cases related to a project to develop a large parcel of coastal land (the Project) within the City of Dana Point (the City). The parcel on which the Project is located is subject to the California Coastal Act of 1976

(Coastal Act) (Pub. Resources Code, § 30000 et seq.)[2] The Project includes approximately 125 luxury home sites on an oceanfront slope.[3] The home sites are to be situated between a newly created public park at the top of the slope and a newly dedicated public beach at the bottom of the slope. Public access trails run through the residential portion of the Project, linking the public park at the top of the slope with the beach below.

As portions of the Project neared completion, including the new public park at the top of the slope, the City adopted an ordinance that mandated limited hours of operation for the trails at the Project site that traverse the partially completed residential subdivision, and the installation of pedestrian gates on those trails. Several individuals and an entity filed administrative appeals of the ordinance with the Commission (the Commission). In ruling on the appeals, the Commission concluded that the limited hours of operation for the trails and the gates require a coastal development permit under the Coastal Act (§ 30600, subd. (a)).[4]

The dispute in this case centers around whether the installation of the gates and the limited hours of operation for the trails fall within the City's nuisance abatement powers

---

[2]     Unless otherwise specified, all subsequent statutory references are to the Public Resources Code.

[3]     At oral argument, counsel for the City stated that the sites are being offered for sale at between $7 million to $12 million each.

[4]     For ease of reference, we will refer to the gates and hours of operation as the "development mandated by the ordinance." The term "development" for purposes of the Coastal Act includes, "[T]he placement or erection of any solid material or structure . . . [or the] change in the intensity of use of water, or of access thereto." (§ 30106.)

3

under the Coastal Act and therefore does not require a coastal development permit, or instead, exceeds those powers and thus requires that the City seek a coastal development permit in order to undertake such development.

The City filed an action (City's Case) seeking to set aside the Commission's decision and restrain any future attempt on the part of the Commission to exercise jurisdiction over the development mandated by the ordinance. The City contended that the Commission lacked jurisdiction over its actions because the limited hours of operation and installation of the gates were required to abate nuisance conditions at the site, and the Coastal Act provides that no provision of the Act is a limitation on "the power of any city or county or city and county to declare, prohibit, and abate nuisances." (§ 30005, subd. (b)). The City argued that the statute deprived the Commission of all jurisdiction under the Coastal Act to prohibit development mandated by the nuisance abatement ordinance for the sole reason that the City claimed that it was acting pursuant to section 30005, subdivision (b). The City sought declaratory relief, including declarations that "the Coastal Commission lacks jurisdiction under Coastal Act section 30005[, subdivision] (b) to place limitations on the enforcement of the Nuisance Abatement Ordinance," and that "the adoption of the Nuisance Abatement Ordinance did not require any City 'coastal development permit application.' " The City also requested that the trial court enjoin the Commission "from undertaking any enforcement action arising from said ordinance." In sum, the City asked the trial court to rule that the City was legitimately exercising nuisance abatement powers under section 30005, subdivision

4

(b) and that the Commission therefore lacked jurisdiction to restrict any action that the City might take pursuant to those powers.[5]

Surfrider Foundation (Surfrider), a nonprofit environmental organization, filed a separate action (Surfrider Case) against the City in which Surfrider claimed that the Commission had jurisdiction over the development mandated by the ordinance, and that the development violated the Coastal Act and various land use regulations governing the Project, including the City's local coastal program (see § 30500).[6] Surfrider also claimed that the City lacked a rational basis for adopting the ordinance and that the ordinance impinged on various state and federal constitutional rights of the public.

In the City's Case, the trial court invalidated the Commission's determination that the development mandated by the ordinance required a coastal development permit. The trial court reasoned that section 30005, subdivision (b) divests the Commission of jurisdiction over such development, "regardless of the merits" of the validity of the City's nuisance declaration. The court granted the City's request for declaratory relief, and stated, "[T]he . . . Commission lacks jurisdiction under Coastal Act section 30005[, subdivision] (b) to place limitations on the enforcement of the Nuisance Abatement Ordinance," and "the adoption of the Nuisance Abatement Ordinance did not require any city 'coastal development permit application.' " The court also issued a judgment and a

---

5      At oral argument in this court, the City's counsel acknowledged that the City asked the trial court to declare that the City had legitimately exercised its nuisance abatement powers under section 30005, subdivision (b).

6      The City and Surfrider each named the developer of the Project, Headlands Reserve LLC (Headlands), as a real party in interest.

writ of mandate against the Commission.  The Commission filed an appeal in the City's Case.

In the Surfrider Case, the trial court concluded that the City had acted arbitrarily and capriciously in the manner by which it declared a nuisance at the Project.  The court entered a judgment stating that the ordinance was "invalid and void insofar as there was no properly declared nuisance and/or the manner of abatement was excessive."  Both the City and Headlands appealed in the Surfrider Case.

In its appeal, the Commission claims that it had administrative appellate jurisdiction pursuant to section 30625 to consider the appeals of the City's ordinance. Section 30625 provides that "any appealable action on a coastal development permit or claim of exemption for any development by a local government . . . may be appealed to the commission by an applicant, any aggrieved person, or any two members of the commission."  The Commission also contends that the trial court erred in interpreting section 30005, subdivision (b) as restraining the Commission from taking future actions with respect to the development mandated by the ordinance.

We conclude that the trial court properly invalidated the Commission's determination that the development mandated by the ordinance requires a permit.  The Commission lacked administrative appellate jurisdiction under section 30625 to consider the appeals of the ordinance because a municipality's enactment of an ordinance does not amount to an "appealable action" (§ 30625, subd. (a)) from which an administrative appeal to the Commission may be taken.  However, we also conclude that the trial court erred in restricting the Commission from exercising jurisdiction over the development

6

mandated by the ordinance without first determining in the City's Case whether the City was acting properly within the scope of its nuisance abatement powers reserved to it pursuant to section 30005, subdivision (b). Because the City asked the trial court to order the Commission to halt any action that would interfere with the City's nuisance abatement measures, the City was required to establish that it was exercising that authority legitimately. More specifically, we hold that before a municipality may obtain a writ of mandate restraining the Commission from exercising jurisdiction over development that the municipality has authorized pursuant to section 30005, subdivision (b), the municipality must demonstrate that it has exercised its nuisance abatement powers in good faith, in that the municipality has not utilized these powers as a pretext for avoiding its obligations under its own local coastal program. We remand the matter to the trial court for a determination of whether the City properly exercised its nuisance abatement powers in this case, in light of our interpretation of section 30005, subdivision (b).

The trial court's conclusion in the Surfrider Case that the City acted arbitrarily and capriciously in enacting the ordinance suggests that on remand in the City's Case, the court is likely to conclude that the City's claim that it enacted the ordinance in order to abate a nuisance is pretextual, and thus, that the Commission may exercise jurisdiction over the gates and hours of operation on the trails.[7] Any future proceedings by the Commission against the City that are authorized by the trial court's ruling on remand in

---

[7] We do not intend in any way to suggest what the trial court *should* do on remand in the City's Case. We offer this observation merely in order to explain our decision to hold the appeals in the Surfrider Case in abeyance in order to permit the trial court to apply our interpretation of section 30005, subdivision (b) in the City's Case.

7

the City's Case are likely to moot the constitutional issues raised in the Surfrider Case. For this reason, we conclude that the appeals in the Surfrider Case should be held in abeyance pending a final resolution of the issues in the City's Case.[8]

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Project*

In 2002, the City proposed amending its local coastal program to allow the development of the Project.

In January 2004, after requiring modifications to bring the local coastal program amendment into conformity with the Coastal Act, the Commission approved the local coastal program amendment.  The modifications included a provision that states, "Public beaches and parks shall . . . maximize hours of use to the extent feasible, in order to maximize public access and recreation opportunities.  Limitations on time of use . . . shall be subject to a coastal development permit."

---

[8]    Our dissenting colleague takes issue with three aspects of the majority opinion: our purported mischaracterization of the relief that the City sought in the trial court; our "alteration of the clear separation of powers set forth in section 30005, subdivision (b)"; and our election to hold in abeyance the appeal in the Surfrider Case pending further proceedings in the City's Case.

We think that the majority opinion adequately addresses these issues.  For the convenience of the reader, we point out that we discuss the relief that the City sought on page 13 and pages 15 through 17; we explain the showing that the City must make on remand in order to obtain a writ of mandate prohibiting the Commission from exercising jurisdiction over development mandated by the Nuisance Abatement Ordinance on pages 52  through 54; and we discuss the reasons for our decision to refrain from deciding the constitutional questions raised in the appeal in the Surfrider Case in light of the likelihood that those questions may become mooted by final resolution of proceedings related to the City's Case on pages 54 through 57.

The local coastal program amendment required that the Project include various trails from the park to the beach, including two trails, referred to as the Mid-Strand and Central Strand trails (beach access trails), that run from the park, along streets through the proposed housing development, to the beach. With respect to gates, the local coastal program amendment provided:

> "Except as noted in this policy, gates, guardhouses, barriers, or other structures designed to . . . restrict access *shall not be permitted* upon any street (public or private) within the Headlands where they have the potential to limit, deter, or prevent public access to the shoreline, inland trails, or parklands. In the Strand residential area, gates, guardhouses, barriers, and other structures designed to regulate or restrict public vehicular access into the residential development may be authorized provided that 1) *pedestrian and bicycle access from Selva Road [at the top of the Project near the park] and the County Beach parking lot through the residential development to the beach remains unimpeded . . . .*" (Italics added.)

The City subsequently adopted a plan entitled "The Headlands Development and Conservation Plan," which incorporated the local coastal program polices pertaining to the hours of use of the beaches and gates at the Project, mentioned above. The City later approved a coastal development permit for the Project.

B.   *The City sets hours for the beach access trails and installs pedestrian gates at the entrance to the trails*

In May 2009, prior to the public opening of the park and beach access trails, the City established that the trails would be open from 8:00 a.m. to either 5:00 p.m. or 7:00 p.m., depending on the time of year. The City also installed gates at the top of the beach access trails that precluded pedestrian access to the trails during hours that the trails were closed. In October 2009, the Commission discovered that the City had installed gates and

9

that it intended to restrict the hours that the trails would be open to the public. The Commission informed the City that its adoption of restrictive hours of operation for the beach access trails and its installation of pedestrian gates at the trail heads constituted violations of the Coastal Act, the local coastal program, and the coastal development permit. The Commission demanded that the City rescind the restrictive hours of operation for the beach access trails and remove the gates. The Commission also informed the City that the City would have to seek an amendment to the local coastal program and a coastal development permit if it wished to adopt such restrictive hours of operation or install gates in the future.

C.     *The City adopts the Nuisance Abatement Ordinance*

In November 2009, the Commission sent a notice of violation letter to the City, informing the City that it could be subject to enforcement proceedings concerning the gates and the hours of operation on the trails. After the City and the Commission engaged in further communications in an unsuccessful attempt to resolve the issue, the City Council held a meeting on March 22, 2010, at which it considered evidence pertaining to public safety issues at the Project. At this meeting, the City adopted an ordinance, Ordinance No. 10-05 (Nuisance Abatement Ordinance), which declared that public nuisance conditions existed in the area of the beach access trails. The Nuisance Abatement Ordinance states, "In the absence of closure regulations, signs, and gates, restricting public access during closures . . . unlawful activities will occur within . . . the general area of Mid-Strand Beach Access and Central Strand Beach Access." The Nuisance Abatement Ordinance reestablished that the trails would be open from 8:00

10

a.m. to either 5:00 p.m. or 7:00 p.m., depending on the time of year, and that pedestrian gates would be used to enforce the hours of operation.

D.    *The Commission's hearing*

Three days after the City adopted the Nuisance Abatement Ordinance, the Commission issued a "Notification of Appeal Period," advising the public that the ordinance could be appealed to the Commission.  Three appeals were filed: one from a private citizen, Vonne M. Barnes, a second from Surfrider, and a third from two members of the Commission.

The City filed a letter brief in opposition to the appeals.  In its brief, the City argued that the Commission lacked appellate jurisdiction to review a local government's enactment of an ordinance.  The City also argued that under section 30005, subdivision (b), the Commission lacked jurisdiction to review a local government's nuisance abatement measures.  In addition, the City argued that its enactment of the Nuisance Abatement Ordinance had been prompted by public safety conditions, and that the measures required by the ordinance were necessary to abate the nuisance conditions near the beach access trails.

On May 13, 2010, the Commission held a hearing at which it considered the appeals and the City's opposition.  At the hearing, the Commission considered whether "the installation of gates, and the establishment of hours of operations that restrict . . . accessways to the beach" in the Project were exempt from coastal permitting requirements under the Coastal Act.  The Commission heard oral presentations from

11

several individuals, including the Commission's executive director, the city attorney for the City, Barnes, and representatives of Surfrider.

The city attorney argued that the Commission lacked jurisdiction to "second guess" the City's Nuisance Abatement Ordinance, and that the concerns addressed by the ordinance represented a "real public safety issue." The Commission's executive director stated that the Nuisance Abatement Ordinance represented "a flagrant attempt to circumvent the public access policies of the Coastal Act, and circumvent the public access requirements that the Commission imposed on this project . . . ." The executive director added, "[B]ut for the public access that the City is now saying constitutes a nuisance, this project, I would guess[,] would not have been approved."

Several commissioners made comments indicating their agreement with the executive director. For example, Commissioner Sara Wan stated:

> "[T]his Commission allowed the destruction of important environmentally sensitive habitat, it allowed the construction of a seawall, and the benefit was public access. [¶] But, from day one, the developer has made every attempt to close that access, and in fact, to never build it, and he came to this Commission in an attempt to get permission not to build it, and this, in my opinion, was a [w]ay for the City to get around the Commission's requirement for that access . . . . [¶] And, that is the danger of this kind of precedent, that any time a community decides they don't want a public accessway, this is the pathway they can take, so it is very important we send a strong message, . . . if you want to close the public accessway, you need to come to this Commission and need to appeal it in a way that if there are legitimate concerns, those concerns are dealt with, but also the public's rights are protected, and that is the key here."

12

At the conclusion of the hearing, the Commission unanimously denied "the claim of exemption for the proposed development, on the ground that the development is not exempt from the permitting requirements of the Coastal Act."

On May 17, the Commission sent the City a letter instructing the City to remove the gates and suspend the restrictive closure hours. The letter stated that if the City failed to comply with the Commission's directives, "Commission staff will have no choice but to pursue formal enforcement action to resolve this matter."

E.    *The City's petition and complaint*

On May 24, the City filed a petition for writ of mandate and complaint for declaratory and injunctive relief in the Orange County Superior Court. In its petition and complaint, the City reiterated the arguments that it had made at the May 13 Commission hearing concerning its contention that the Commission lacked jurisdiction to consider the Nuisance Abatement Ordinance. The City maintained that the Commission's assertion of jurisdiction over the "enforcement, scope or legality of the City's nuisance abatement legislation" violated the separation of powers doctrine.

The City brought causes of action for traditional and administrative mandamus and sought declaratory and injunctive relief. In its prayer for relief, the City requested that the trial court order the Commission to vacate and set aside its actions taken on May 13, 2010, and issue a writ of mandate restraining the Commission from undertaking any future actions to submit the City's Nuisance Abatement Ordinance to the Commission's jurisdiction.

The City also requested that the court declare that the Commission "lacks jurisdiction under Coastal Act section 30005[, subdivision] (b) to place limitations on the enforcement of the Nuisance Abatement Ordinance."  In addition, the City sought a declaration that the adoption of the Nuisance Abatement Ordinance did not require a coastal development permit application.  Finally, the City requested a "stay and/or temporary restraining order, preliminary injunction and permanent injunction" barring the Commission from "undertaking any enforcement action arising from [the Nuisance Abatement Ordinance]."

F.      *The Surfrider petition and complaint*

On June 17, Surfrider filed a petition for writ of mandate and complaint for declaratory and injunctive relief in which it argued that the City had violated the Coastal Act and its local coastal program by undertaking the development mandated by the Nuisance Abatement Ordinance.  Surfrider raised numerous arguments in support of its contention that the Commission had jurisdiction over the development mandated by the Nuisance Abatement Ordinance, including that "[s]ection 30005 is not a limitless exemption from Coastal Act permitting requirements declared in the name of 'nuisance abatement.' "  Surfrider also requested that the court declare that the "record fails to establish a public nuisance . . . ."  In addition, Surfrider contended that the Nuisance Abatement Ordinance should be subjected to a heightened standard of judicial scrutiny because the ordinance violated both a state constitutional guarantee to "maximum beach access" as well as the right to free assembly guaranteed under the First Amendment to the United States Constitution.

14

Surfrider brought causes of action for traditional and administrative mandamus and sought declaratory and injunctive relief. Surfrider requested that the trial court direct the City to remove the gates as well as the signs advising the public of the restrictive hours at the Mid-Strand and Central Strand trail heads. Surfrider also requested that the court declare the Nuisance Abatement Ordinance void. In addition, Surfrider asked the court to order the City to apply to the Commission for a coastal development permit prior to attempting to undertake the development mandated by the Nuisance Abatement Ordinance.

G.    *The court's consideration of the petitions/complaints*

The trial court consolidated the City's Case and the Surfrider Case and transferred the consolidated matter from the Orange County Superior Court to the San Diego County Superior Court. The parties lodged the administrative record related to the City's adoption of the Nuisance Abatement Ordinance and the appeals of the ordinance before the Commission, and submitted additional briefing on the petitions/complaints. On April 28, 2011, the court held a hearing on the petitions/complaints.

H.    *The trial court's rulings*

1.    *The City's petition and complaint*

Two days before the hearing on the petitions/complaints, the trial court issued a tentative ruling that stated:

> "The City's petition sought a writ of mandate commanding
> the . . . Commission to vacate and set aside its actions taken on May
> 13, 2010, and restraining the . . . Commission from undertaking any
> further actions to enforce the . . . Commission's May 13, 2010,
> decision.

15

"The Court's tentative ruling is to grant this request finding that the . . . Commission lacked the jurisdiction to make a determination as to the appropriateness of the City's finding of a nuisance. In reaching this result, the Court concludes that the . . . Commission's actions in this regard were contrary to the express language of . . . section 30005[, subdivision] (b) providing that no provision of the Coastal Act shall limit 'the power of any city . . . to declare, prohibit, and abate nuisances.'

"In this case, the City has declared a nuisance in the area of Strand Vista Park and mandated enforcement of closure hours for the Mid-Strand and Central Strand access trails. The . . . Commission disagrees with the City's findings of a nuisance and the manner of abatement.

"Regardless of the merits of the Commission's arguments concerning the finding of a nuisance, the Court believes that the . . . Commission lacks jurisdiction to adjudicate this matter and that such issues are reserved for adjudication by the courts.

"Based on this finding, the Court believes the writ of mandate should issue as requested and further makes the findings at [paragraphs 2 and 3] of the City's 'Request for Relief' . . . of its petition."

Through its incorporation of the City's request for relief, the trial court indicated

its intent to grant the following declaratory relief:

"a. [T]he . . . Commission lacks jurisdiction under Coastal Act section 30005[, subdivision] (b) to place limitations on the enforcement of the Nuisance Abatement Ordinance;

"b. [T]he . . . Commission lacks jurisdiction under [the] California Constitution, pursuant to the separation of powers doctrine, to adjudicate whether the City's adoption of the Nuisance Abatement Ordinance was a legitimate and proper exercise of the City's police power; and

"c. [T]he . . . Commission lacked jurisdiction to proceed with the 'appeal,' and thus lacks jurisdiction to proceed with any subsequent actions based upon the 'appeal,' because the adoption of the

16

Nuisance Abatement Ordinance did not require any city 'coastal development permit application.' "

The court also indicated its intent to restrain the Commission from taking "any further action to proceed with or to act upon the appeal of the Nuisance Abatement Ordinance or from undertaking any enforcement action arising from said ordinance."

At the conclusion of the April 28 hearing on the petitions/complaints, the trial court confirmed its tentative ruling on the City's writ petition and complaint, thereby granting the declaratory and injunctive relief described above.[9]

On June 2, the court entered a judgment that states in relevant part:

> "[T]he . . . Commission's actions taken on May 13, 2010 (i) determining that City Ordinance No. 10-05 ('Nuisance Abatement Ordinance'), an urgency ordinance adopted by the City Council of the City of Dana Point, raised a substantial issue under the Coastal Act, and (ii) determining that the Nuisance Abatement Ordinance is not exempt from the Coastal Act's permit requirements (collectively the 'Commission's May 13, 2010 Actions'), are invalid and void insofar as the . . . Commission lacks any jurisdiction over the City's Nuisance Abatement Ordinance pursuant to . . . section 30005[, subdivision] (b)."

That same day, the court issued a peremptory writ of mandate ordering the Commission to set aside its May 13, 2010 actions pertaining to the Nuisance Abatement Ordinance, and directing the Commission to "cease and desist from any actions to enforce or otherwise attempt to submit the City's Nuisance Abatement Ordinance to the jurisdiction of the . . . Commission."

---

9     The trial court took Surfrider's petition under submission.

17

2.      *The Surfrider petition and complaint*

After taking the Surfrider petition/complaint under submission, the trial court entered an order granting Surfrider's request for declaratory relief. In its June 1 order, the court stated that an application of the "rational basis standard"[10] revealed that the "City's record fails to support a public nuisance," and that "the [Nuisance Abatement Ordinance] should be set aside." The court reasoned:

> "Having reviewed the record and considered the arguments of the parties, the Court believes the record was entirely lacking in evidentiary support for declaring a nuisance and that the City acted arbitrarily and capriciously in making such a declaration. Additionally, even if a nuisance existed the Court finds the City acted arbitrarily and capriciously in the manner by which it abated the purported nuisance and that the manner of abatement was entirely lacking in evidentiary support."

On July 29, the Court entered a judgment that stated that the Nuisance Abatement Ordinance is "invalid and void insofar as there was no properly declared nuisance and/or the manner of abatement was excessive." That same day, the court also issued a peremptory writ of mandate directing the City to set aside the Nuisance Abatement Ordinance and not to take any further actions to enforce that ordinance.

I.      *The appeals*

The Commission appealed from the judgment on the City's writ petition/complaint and the City and Headlands each appealed from the judgment on Surfrider's

---

10      In its order, the trial court stated that it did not have to consider "Surfrider's constitutional arguments." As noted in part II.F., *ante*, in addition to contending that the City's Nuisance Abatement Ordinance lacked any rational basis, Surfrider had argued, in the alternative, that a heightened standard of scrutiny should be applied in reviewing the ordinance because of its purported effect on various constitutional rights.

petition/complaint. Pursuant to the parties' stipulation, this court consolidated the appeals.

## III.

## DISCUSSION

A.    *The Commission's appeal*

The Commission claims that it had administrative appellate jurisdiction pursuant to section 30625 to consider the three administrative appeals of the Nuisance Abatement Ordinance. The Commission also contends that the trial court erred in concluding that section 30005, subdivision (b) deprived the Commission of jurisdiction to find that the placement of gates at the Mid-Strand and Central Strand trail access points and the adoption of hours of operation for these trails mandated by the Nuisance Abatement Ordinance required a coastal development permit.

We conclude in part III.A.2., *post*, that the Commission did not have administrative appellate jurisdiction *pursuant to section 30625* to consider whether the development mandated by the Nuisance Abatement Ordinance required a permit. However, we conclude in part III.A.3., *post*, that the trial court erred in determining that *section 30005, subdivision (b)* precludes the Commission from finding that such development required a coastal development permit and in restraining the Commission from taking any future action to submit the development to the Commission's jurisdiction. In part III.A.4., *post*, we explain how the trial court shall proceed on remand.

19

1.  *Overview of the Coastal Act*

One of the core principles of the Coastal Act is to maximize public access to the coast, to the extent feasible (§ 30000 et seq.):

> "The . . . Coastal Act was passed in 1976.  In it, the Legislature announced five 'basic goals of the state for the coastal zone.' (§ 30001.5.)  One of these is to '[m]aximize public access to and along the coast and maximize public recreational opportunities in the coastal zone consistent with sound resources conservation principles and constitutionally protected rights of private property owners.' (*Id.,* subd. (c).)"  (*City of Malibu v. California Coastal Com.* (2012) 206 Cal.App.4th 549, 553.)

The Coastal Act has several provisions that implement the Act's public access goals.  (See, e.g., § 30210 ["In carrying out the requirement of Section 4 of Article X of the California Constitution, maximum access, which shall be conspicuously posted, and recreational opportunities shall be provided for all the people consistent with public safety needs and the need to protect public rights, rights of private property owners, and natural resource areas from overuse"]; § 30212, subd. (a) [subject to certain exceptions, "Public access from the nearest public roadway to the shoreline and along the coast shall be provided in new development projects"].)

In *Citizens For A Better Eureka v. California Coastal Com.* (2011) 196 Cal.App.4th 1577, 1580-1581 (*Citizens*), the court provided an overview of the regulatory framework contained in the Coastal Act:

> "A [coastal development permit] is generally required for a development within the coastal zone as defined in the Coastal Act. (§§ 30103, subd. (a), 30600, subd. (a).)  A local government within the coastal zone is required to prepare a local coastal program . . . for the portion of the coastal zone within its jurisdiction.  (§ 30500, subd. (a).)  When the Commission has certified a[] [local coastal

20

program] and actions to implement the [local coastal program] have become effective, authority to issue [coastal development permits] within the certified area is delegated from the Commission to the local government, subject to appeals to the Commission. (§ 30519, subd. (a).)

"Local government actions on [coastal development permit] applications for certain types of developments, e.g., those within 100 feet of any wetland, are appealable to the Commission (§ 30603, subd. (a)), and the Commission has appellate jurisdiction to determine whether a [coastal development permit] is consistent with the [local coastal program] and coastal access policies (§ 30603, subd. (b)). In an appeal, the Commission first determines whether a substantial issue as to such consistency has been raised. (§ 30625, subd. (b).) If a substantial issue is presented, the Commission reviews the [coastal development permit] application de novo. (§ 30621, subd. (a); Cal. Code Regs., tit. 14, § 13115, subd. (b).)"

In *Charles A. Pratt Construction Co., Inc. v. California Coastal Com.* (2008) 162 Cal.App.4th 1068 (*Charles A. Pratt Construction Co., Inc.*) the Court of Appeal explained that a fundamental purpose of the Coastal Act is to ensure that state policies under the Act take precedence over the concerns of local governments, notwithstanding the involvement of local governments in the Act's implementation:

"Although local governments have the authority to issue coastal development permits, that authority is delegated by the Commission. The Commission has the ultimate authority to ensure that coastal development conforms to the policies embodied in the state's Coastal Act. In fact, a fundamental purpose of the Coastal Act is to ensure that state policies prevail over the concerns of local government. (See *City of Chula Vista v. Superior Court* (1982) 133 Cal.App.3d 472, 489 [Commission exercises independent judgment in approving [local coastal program] because it is assumed statewide interests are not always well represented at the local level].) The Commission applies state law and policies to determine whether the development permit complies with the [local coastal program]." (*Charles A. Pratt Construction Co., Inc., supra*, at pp. 1075-1076; accord *Pacific Palisades Bowl Mobile Estates, LLC. v. City of Los Angeles* (2012)

21

55 Cal.4th 783, 794 (*Pacific Palisades*), citing *Charles A. Pratt Construction Co., Inc.*)

2. *The Commission lacked administrative appellate jurisdiction under section 30625 to consider the three appeals of the City's ordinance*

The Commission contends that that it had jurisdiction pursuant to section 30625 to consider the three appeals of the City's adoption of the Nuisance Abatement Ordinance. Because the Commission's claim raises an issue of statutory interpretation, we apply the de novo standard of review. (See *Doe v. Brown* (2009) 177 Cal.App.4th 408, 417 ["We apply the de novo standard of review to this claim, since the claim raises an issue of statutory interpretation"].)

a. *The Commission's appellate administrative jurisdiction over local government decisions pursuant to section 30625*

Section 30625 provides:

"(a) Except as otherwise specifically provided in subdivision (a) of Section 30602, any *appealable action* on a coastal development permit or claim of exemption for any development *by a local government* or port governing body may be *appealed* to the commission by an applicant, any aggrieved person, or any two members of the commission. The commission may approve, modify, or deny such proposed development, and if no action is taken within the time limit specified in Sections 30621 and 30622, *the decision of the local government* or port governing body, as the case may be, shall become final, unless the time limit in Section 30621 or 30622 is waived by the applicant.

"(b) The commission shall hear an *appeal* unless it determines the following:

"(1) With respect to *appeals* pursuant to subdivision (a) of Section 30602, that no substantial issue exists as to conformity with Chapter 3 (commencing with Section 30200).

22

"(2) With respect to *appeals* to the commission after certification of a local coastal program, that no substantial issue exists with respect to the grounds on which an appeal has been filed pursuant to Section 30603.

"(3) With respect to *appeals* to the commission after certification of a port master plan, that no substantial issue exists as to conformity with the certified port master plan.

"(c) Decisions of the commission, where applicable, shall guide local governments or port governing bodies in their future actions under this division."  (Italics added.)

      b.     *Application*

The plain language of section 30625 indicates that the statute grants the Commission administrative *appellate* jurisdiction to hear an *appeal* of a *decision* rendered by a local government that has *adjudicated* a claim related to either a coastal development permit or a claim of exemption from Coastal Act permitting requirements. The statute's references to "*appeals* pursuant to subdivision (a) of Section 30602" (§ 30625, subd. (b)(1), italics added), and "*appeal*s to the commission after certification of a local coastal program . . . pursuant to Section 30603" (§ 30625, subd. (b)(2), italics added), support that conclusion.  Sections 30602 and 30603 provide that the Commission has appellate jurisdiction to review certain quasi-adjudicatory actions taken by local governments in the context of coastal development applications.[11]

_____

[11]    Section 30602 provides in relevant part, "Prior to certification of its local coastal program, any action taken by a local government on a coastal development permit application may be appealed . . . to the commission."
    Section 30603 provides in relevant part, "(a) After certification of its local coastal program, an action taken by a local government on a coastal development permit application may be appealed to the commission for only the following types of

23

A municipality's legislative action in adopting an ordinance is *not* a quasi-adjudicatory administrative decision as to which the Commission has appellate jurisdiction pursuant to section 30625.  The City's enactment of the Nuisance Abatement Ordinance thus did not constitute a quasi-adjudicatory "appealable action" (§ 30625, subd. (a)) by a "local government" from which *an appeal* pursuant to section 30625 could be taken.

Not surprisingly, there is nothing in the Commission's administrative regulations implementing the Coastal Act that suggests that the Commission has ever interpreted section 30625 as granting it appellate jurisdiction to consider whether development mandated by a local government's nuisance abatement ordinance, or by any other local ordinance, requires a permit.[12]  Even the administrative forms used by the Commission in this case indicate that the only matters over which the Commission exercises appellate jurisdiction pursuant to section 30625 are *permitting decisions* made by a local government.  A form entitled "Commission Notification of Appeal" informed the City that "the coastal development permit decision described below has been appealed to the California Coastal Commission pursuant to . . . Sections 30603 and 30625."  The Commission's "Notification of Final Appeal Action" states in relevant part, "Where the Commission vote is 'substantial issue,' and then 'approval' or 'approval with conditions,'

developments: [¶] (1) Developments approved by the local government between the sea and the first public road paralleling the sea or within 300 feet of the inland extent of any beach or of the mean high tideline of the sea where there is no beach, whichever is the greater distance."

[12]    These regulations are codified in a chapter entitled "Exclusions from Permit Requirements."  (Cal. Code. Regs., tit. 14, § 13200 et. seq., div 5.5, ch. 6.)

24

or 'denial' on the de novo application, the Commission decision *replaces the local coastal permit decision*." (Italics added.) In this case, the City made *no* coastal development permit decision, but instead, acted in a legislative capacity in adopting the Nuisance Abatement Ordinance.

The Commission contends that the City's action in adopting the Nuisance Abatement Ordinance amounted to a "claim of exemption for any development by a local government" within the meaning of section 30625, and is therefore appealable to the Commission. We disagree. The City and Headlands persuasively argue that this portion of section 30625 authorizes the Commission to exercise appellate jurisdiction over quasi-adjudicatory decisions made by a local government on applications for exemptions that are specifically referred to in the Coastal Act, including emergency projects pursuant to section 30610.2, and the construction of certain single-family residences pursuant to section 30600.[13] More broadly, while the Commission reads the statute as authorizing

---

[13] Section 30610.2 provides: "Any person wishing to construct a single-family residence on a vacant lot within an area designated by the commission pursuant to subdivision (b) of Section 30610.1 shall, prior to the commencement of construction, secure from the local government with jurisdiction over the lot in question a written certification or determination that the lot meets the criteria specified in subdivision (c) of Section 30610.1 and is therefore *exempt* from the coastal development permit requirements of this division." (Italics added.)

Section 30600 provides in relevant part:
"(e) This section does not apply to any of the following projects, except that notification by the agency or public utility performing any of the following projects shall be made to the commission within 14 days from the date of the commencement of the project:

"[¶] . . . [¶]

25

review of a *local government*'s claim of exemption, the statute actually authorizes the Commission to exercise appellate jurisdiction over "an appealable action . . . by a local government" (§ 30625, subd. (a)). Thus, section 30625, subdivision (a) authorizes the Commission to review the decision of a local government on an *applicant's* claim of exemption, not a *local government's* claim of exemption. In sum, we conclude that when a municipality acts legislatively in an attempt to exercise nuisance abatement powers pursuant to section 30005, subdivision (b), this municipal action does not constitute a "claim of exemption" as that term is used in section 30625, subdivision (a).

Finally, we reject the Commission's suggestion, raised in its reply brief, that the Commission was authorized to review the City's enactment of the Nuisance Abatement Ordinance because the Commission is authorized to directly adjudicate certain claims for exemptions from the Coastal Act's permit requirements, such as vested rights claims pursuant to section 30608.[14] The Commission appears to theorize that a party may

---

"(2) Emergency projects undertaken, carried out, or approved by a public agency to maintain, repair, or restore an existing highway . . . damaged as a result of fire, flood, storm, earthquake, land subsidence, gradual earth movement, or landslide, within one year of the damage. This paragraph does not *exempt* from this section any project undertaken, carried out, or approved by a public agency to expand or widen a highway damaged by fire, flood, storm, earthquake, land subsidence, gradual earth movement, or landslide." (Italics added.)

[14] Section 30608 provides: "No person who has obtained a vested right in a development prior to the effective date of this division or who has obtained a permit from the California Coastal Zone Conservation Commission pursuant to the California Coastal Zone Conservation Act of 1972 (former Division 18 (commencing with Section 27000)) shall be required to secure approval for the development pursuant to this division.

26

directly challenge a local government's assertion of abatement authority under section 30005, subdivision (b) before the Commission, pursuant to section 30625, because "vested rights claims are made directly to the Commission." We reject this argument because the Commission has not demonstrated that in adjudicating a section 30608 claim brought "directly to the Commission" it is exercising appellate jurisdiction pursuant to section 30625.

In sum, section 30625 grants the Commission appellate administrative jurisdiction over certain appeals. In this case, the City took no "appealable action" (§ 30625, subd. (a)) from which an appeal could be taken. Thus, the Commission did not have jurisdiction pursuant to section 30625 to consider the validity of the development mandated by the Nuisance Abatement Ordinance. Accordingly, the actions that the Commission took at the May 13 hearing were unauthorized and, therefore, void.

Notwithstanding our conclusion that the Commission did not have jurisdiction pursuant to section 30625 to consider whether the development mandated by the Nuisance Abatement Ordinance constituted a violation of the local coastal program and required a coastal development permit, we consider below whether the trial court erred in restraining the Commission from exercising jurisdiction over the development mandated by the Nuisance Abatement Ordinance without first determining whether the City was acting within the scope of section 30005, subdivision (b).

However, no substantial change may be made in the development without prior approval having been obtained under this division."

27

3. *The trial court erred in restraining the Commission from exercising jurisdiction over the development mandated by the Nuisance Abatement Ordinance without first determining whether the City was properly acting within the scope of section 30005, subdivision (b)*

The Commission claims that the trial court erred in restraining the Commission from exercising jurisdiction over the development mandated by the Nuisance Abatement Ordinance without first determining whether the City was acting within the scope of section 30005, subdivision (b). In order to resolve the Commission's claim, we must address three subsidiary issues. First, was the City permitted to seek a writ of mandate to preclude the Commission from exercising jurisdiction over the City's actions on the ground that those actions are necessary to abate a nuisance? In part III.A.3.a., *post*, we conclude that under the unusual circumstances of this case, in which the Commission has already indicated its intent to direct the City to cease implementing the development mandated by the Nuisance Abatement Ordinance, the City was entitled to seek a writ of mandate in the trial court to restrain the Commission from exercising jurisdiction over the City's efforts to implement the Nuisance Abatement Ordinance. Second, what was the City required to demonstrate in order to obtain injunctive or writ relief restraining the Commission from exercising jurisdiction over the development mandated by the Nuisance Abatement Ordinance? In part III.A.3.b., *post,* we conclude that the City, as the petitioner/plaintiff in this action, was required to demonstrate that it had exercised its nuisance abatement powers under section 30005, subdivision (b) in good faith, and that it had not adopted the Nuisance Abatement Ordinance as a pretext for avoiding its obligations under the City's local coastal program. Third, did the trial court err in

28

concluding that the City demonstrated that it was entitled to a writ restraining the Commission from exercising jurisdiction over the development mandated by the Nuisance Abatement Ordinance? In part III.A.3.c., *post*, we conclude that the trial court erred in ordering the Commission to cease and desist exercising jurisdiction over development mandated by the Nuisance Abatement Ordinance without first determining whether the City's enactment of the ordinance was a pretext for avoiding the requirements of its local coastal program.

      a.      *The City was entitled to seek a writ of mandate to preclude the Commission from exercising jurisdiction over its actions on the ground that those actions were necessary to abate a nuisance*

In light of our affirmance of the trial court's conclusion that the action taken by the Commission at the May 13, 2010 hearing was void because section 30625 did not grant the Commission jurisdiction to hold such a hearing, we first consider whether the doctrine of exhaustion of administrative remedies requires us to reverse the trial court's rulings insofar as the court ordered the Commission to cease and desist taking any *future* actions to exercise jurisdiction over the development mandated by the City's Nuisance Abatement Ordinance. Specifically, we consider whether the exhaustion doctrine requires that we direct the trial court to order the City to submit its contention that the Commission lacks jurisdiction under section 30005, subdivision (b) to the Commission, in the event that the Commission attempts to institute any further proceedings concerning development mandated by the Nuisance Abatement Ordinance. We conclude that under the circumstances of this case, the exhaustion doctrine did not preclude the City from seeking writ relief to restrain the Commission from taking future actions to exercise

29

jurisdiction over the development mandated by the City's Nuisance Abatement Ordinance.

"In general, a party must exhaust administrative remedies before resorting to the courts. [Citations.]" (*Coachella Valley Mosquito and Vector Control Dist. v. California Public Employment Relations Bd.* (2005) 35 Cal.4th 1072, 1080 (*Coachella*).) "The doctrine requiring exhaustion of administrative remedies is subject to exceptions. [Citation.] Under one of these exceptions, '[f]ailure to exhaust administrative remedies is excused if it is clear that exhaustion would be futile.' [Citations.] 'The futility exception requires that the party invoking the exception "can positively state that the [agency] has declared what its ruling will be on a particular case." ' [Citations.]" (*Id*. at pp. 1080-1081.)

At its May 13 hearing, the Commission rejected the City's section 30005, subdivision (b) jurisdictional claim and concluded that the development mandated by the Nuisance Abatement Ordinance required a coastal development permit. In a May 17 letter, the Commission advised the City that the development mandated by the Ordinance "lacks the required Coastal Development Permit and constitutes a violation of the [local coastal program] and the Coastal Act." The Commission further instructed the City that "the unpermitted gates . . . need to be removed, and the hour restrictions should be suspended."

Under these circumstances, notwithstanding that the action taken by the Commission at the May 13 hearing was void due to the Commission's lack of jurisdiction (see pt. III.A.2., *ante*), the Commission has fully and clearly declared "what its ruling will

30

be" (*Coachella, supra,* 35 Cal.4th at pp. 1080-1081), with respect to the development mandated by the Nuisance Abatement Ordinance. The futility exception to the exhaustion doctrine therefore applies (*ibid.*), and the City was permitted to seek writ relief to restrain the Commission from taking future actions to exercise jurisdiction over the development mandated by the City's Nuisance Abatement Ordinance.[15]

Accordingly, we agree with the City and Headlands that, under the circumstances of this case, the City was permitted to seek a judicial determination as to whether it was properly acting within the scope of section 30005, subdivision (b) in enacting the Nuisance Abatement Ordinance. However, for the reasons discussed in parts III.A.3.b. and III.A.3.c., *post*, we conclude that the trial court erred in concluding that the City demonstrated that it was acting within the scope section 30005, subdivision (b) in this case.

---

[15] In light of our conclusion that any further action on the part of the City to exhaust administrative remedies would be futile under the circumstances of this case, we need not consider whether, in general, a local government may seek to restrain the Commission from exercising jurisdiction over a development on the ground that the local government's actions are within the scope of section 30005, subdivision (b), without the Commission having first adjudicated the claim. (See *Coachella, supra*, 35 Cal.4th at pp. 1081-1082 ["exhaustion of administrative remedies may be excused when a party claims that 'the agency lacks authority, statutory or otherwise, to resolve the underlying dispute between the parties,' " and stating that "[i]n deciding whether to entertain a claim that an agency lacks jurisdiction before the agency proceedings have run their course, a court considers three factors: the injury or burden that exhaustion will impose, the strength of the legal argument that the agency lacks jurisdiction, and the extent to which administrative expertise may aid in resolving the jurisdictional issue"].)

31

b.      *A local government may not order the abatement of a nuisance as a pretext for avoiding the requirements of the local government's own local coastal program*

In considering whether the trial court erred in concluding that section 30005, subdivision (b) precludes the Commission from exercising jurisdiction over development mandated by the Nuisance Abatement Ordinance, we are required to interpret the scope of section 30005, subdivision (b).  We consider this issue de novo.  (See *Doe v. Brown, supra*, 177 Cal.App.4th at p. 417.)

i.      *Section 30005*

Section 30005 provides:

"No provision of this division[16] is a limitation on any of the following:

"(a) Except as otherwise limited by state law, on the power of a city or county or city and county to adopt and enforce additional regulations, not in conflict with this act, imposing further conditions, restrictions, or limitations with respect to any land or water use or other activity which might adversely affect the resources of the coastal zone.

"(b) *On the power of any city or county or city and county to declare, prohibit, and abate nuisances*.

"(c) On the power of the Attorney General to bring an action in the name of the people of the state to enjoin any waste or pollution of the resources of the coastal zone or any nuisance.

"(d) On the right of any person to maintain an appropriate action for relief against a private nuisance or for any other private relief." (Italics added.)

---

16      The "division" in section 30005 refers to the Coastal Act.  (See § 30000 ["This division shall be known and may be cited as the California Coastal Act of 1976."])

32

ii.    *The parties' arguments concerning the scope of section 30005, subdivision (b)*

The City and Headlands argue that section 30005, subdivision (b) should be interpreted to permit a city to abate a nuisance in any manner within the scope of its police powers, even if the abatement is in conflict with the Coastal Act and/or the City's local coastal program.[17]  However, neither the City nor Headlands appears to contend that section 30005, subdivision (b) should be interpreted to permit a city to exercise its nuisance abatement powers for the specific purpose of avoiding complying with the city's own local coastal program.[18]  Indeed, the City states in its brief, "The courts . . . are the appropriate forum for an argument about whether a city is abusing its nuisance powers."

The Commission contends that section 30005 clarifies that the Coastal Act does not occupy "the field of land use regulation," but maintains that the statute cannot reasonably be interpreted as authorizing a city to "evade the Coastal Act access requirements by simply declaring some isolated and weakly documented instances of unlawful conduct to be nuisances and imposing abatement measures that drastically restrict lawful public access."  In other words, the Commission maintains that section

---

[17]    The City states in its brief, "[T]he Coastal Act does not limit a city's police powers to declare, abate and prevent nuisances, *even if those measures conflict with Coastal Act provisions*."  (Italics added.)  Headlands implicitly takes the same position throughout its brief.

[18]    Both the City and Headlands forcefully contend as a *factual* matter that the City's adoption of the Nuisance Abatement Ordinance was not a pretext for avoiding local coastal program obligations.  We need not consider arguments pertaining to these contentions in the context of deciding the statutory interpretation question presented in this appeal.  However, the trial court may consider them on remand.  (See pt. III.A.4., *post*.)

33

30005, subdivision (b) should not be interpreted to permit a city to exercise its nuisance abatement powers to avoid complying with the city's own local coastal program.[19] The Commission argues that this interpretation "would effectively allow a local government to amend its [local coastal program] without Commission certification."

        iii.     *Applicable principles of statutory interpretation*

In *Doe v. Brown*, *supra*, 177 Cal.App.4th at pages 417-418, this court outlined the following well-established principles of statutory interpretation:

> " 'In construing any statute, "[w]ell-established rules of statutory construction require us to ascertain the intent of the enacting legislative body so that we may adopt the construction that best effectuates the purpose of the law." [Citation.] "We first examine the words themselves because the statutory language is generally the most reliable indicator of legislative intent. [Citation.] The words of the statute should be given their ordinary and usual meaning and should be construed in their statutory context." [Citation.] If the statutory language is unambiguous, "we presume the Legislature meant what it said, and the plain meaning of the statute governs." [Citation.]' [Citation.]
>
> " 'If, however, the statutory language is ambiguous or reasonably susceptible to more than one interpretation, we will "examine the context in which the language appears, adopting the construction that best harmonizes the statute internally and with related statutes," and we can " ' "look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part." ' " [Citation.]' [Citation.]

---

19    In its brief, the Commission also states, "The Commission had substantial evidence to conclude the [Nuisance Abatement Ordinance] was essentially a ruse" and that "[t]he City . . . misused its nuisance authority to evade the Coastal Act and its [local coastal program]."

" ' "We must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences."  [Citation.]' [Citation.]  Further, 'We presume that the Legislature, when enacting a statute, was aware of existing related laws and intended to maintain a consistent body of rules.  [Citation.]'  [Citation.]"

Section 30005, subdivision (b) is a "savings clause" (*Citizens, supra*, 196 Cal.App. at p. 1584).  Generally speaking, a savings clause preserves some preexisting legal authority from the effect of some newly enacted legal authority that contains the savings clause.  "Saving clauses are usually strictly construed. . . . "  (2A Norman J. Singer et al., *Sutherland Statutory Construction,* §§ 47.12 (7th ed. 2008) (hereafter *Sutherland*); see also *In re Lifschultz Fast Freight Corp.* (7th Cir. 1995) 63 F.3d 621, 628 [citing *Sutherland* and stating that courts should "resolve doubts about the scope of statutory provisions and exceptions against those provisions"].)

iv.     *Relevant case law*

In *Citizens*, *supra*, 196 Cal.App.4th 1577, the Court of Appeal addressed the Commission's jurisdiction to consider an appeal of the City of Eureka's (Eureka) issuance of a coastal development permit for an "extensive marina project" on a site for which Eureka had previously issued several nuisance abatement orders.  (*Id.* at p. 1580.)  The permit authorized both site remediation and wetland restoration.  (*Id*. at pp. 1581-1582.)  Several appeals of the permit were filed with the Commission.  (*Id*. at p. 1582.)  Prior to the resolution of those appeals, a citizens group that supported the pollution remediation mandated by the permit filed a petition for writ of administrative mandate in the trial court, arguing that the Commission lacked jurisdiction to consider the permit appeals

35

because Eureka had issued the permit pursuant to its power to abate nuisances under section 30005, subdivision (b) and that the Commission's exercise of jurisdiction over the appeals would " 'entail[] delay[s] in [the] cleanup.' " (*Citizens, supra,* at p. 1583.)  The trial court ruled that the actions authorized in the permit went " 'far beyond just nuisance abatement,' " and that section 30005 did not prevent the Commission from asserting jurisdiction under these circumstances.  (*Citizens, supra,* at p. 1583.)

On appeal, in addressing the proper application of section 30005, the *Citizens* court began by reviewing *City of Monterey v. California Coastal Com.* (1981) 120 Cal.App.3d 799 (*Monterey*) in which the Court of Appeal stated, in dicta, that a coastal development permit is required where a project exceeds the scope of the "nuisance exception" in section 30005, subdivision (b).  (*Citizens, supra,* 196 Cal.App.4th at p. 1585.)  The *Citizens* court also discussed a 1978 indexed advice letter from the Attorney General to the Commission (Cal. Atty. Gen., Indexed Letter, No. IL 78–73 (May 18, 1978)), that stated that "neither a local government nor a person acting under order of a local government [i]s required to obtain a [coastal development permit]," prior to undertaking "abatement of a nuisance declared by a local government, where the abatement would otherwise constitute a development under the Coastal Act," but that " '[i]f the owner's activity exceeds the amount necessary to abate the nuisance, the owner of course must obtain a coastal permit for that additional work.' [Citation.]" (*Citizens, supra,* at p. 1585.)

After reviewing these authorities, the *Citizens* court stated:

"These authorities point to an appropriate and workable rule that has been endorsed by Commission staff[20] and which we adopt here: '[W]here a local government properly declares a nuisance and requires abatement measures that are narrowly targeted at abating the declared nuisance, those measures do not require a [coastal development permit].' On the other hand, a [coastal development permit] is required if the development 'activity exceeds the amount necessary' [citation] 'simply to abate the nuisance.' [Citation.]" (*Citizens, supra*, 196 Cal.App.4th at p. 1585, fns. omitted.)

In applying this law to the facts of that case, the *Citizens* court concluded that there was substantial evidence to support the trial court's conclusion that the development authorized by the permit went " 'far beyond just nuisance abatement.' " (*Citizens, supra*, 196 Cal.App.4th at p. 1586.)[21] The *Citizens* court affirmed the judgment and summarized its holding as follows:

"Under section 30005, subdivision (b), application of the Coastal Act turns on whether a development is limited to nuisance abatement. If it is not so confined, then a [coastal development permit] is required. If a [coastal development permit] is required, the procedures provided for [coastal development permits] including appeals to the Commission, must be followed. We have concluded that a [coastal development permit] is required here, and accordingly reject [appellant's] argument that the Commission lacks jurisdiction

---

20    In a footnote, the *Citizens* court stated, "We are quoting here from a May 2010 Commission staff memorandum pertaining to another development, which has been included in the record in this case." (*Citizens, supra*, 196 Cal.App.4th at p. 1585, fn. 4.) It appears that the memorandum to which the *Citizens* court was referring was a Commission staff memorandum prepared for the Commission's May 2010 hearing at issue in this appeal.

21    In reaching this conclusion, the *Citizens* court focused in particular on the wetland activities authorized by the permit. (*Citizens, supra*, 196 Cal.App.4th at p. 1587 ["the wetlands aspects of phase 1 involve environmental and regulatory issues significantly beyond those presented in the 'site remediation' portion of the development in which the nuisances identified by the City—contaminated soil, rubbish, and overgrown vegetation—would be abated"].)

37

to determine the [coastal development permit] appeal in this case." (*Citizens, supra,* at p. 1589, fn. omitted.)

In *Big Creek Lumber Co. v. County of Santa Cruz* (2006) 38 Cal.4th 1139 (*Big Creek*) and *Pacific Lumber Co. v. State Water Resources Control Bd.* (2006) 37 Cal.4th 921 (*Pacific Lumber*), our Supreme Court discussed two savings clauses that are similar, but not identical, to section 30005. Former section 4514 provided in relevant part:

> "No provision of [the Forest Practice Act] or any ruling, requirement, or policy of the [Board of Forestry] is a limitation on any of the following: [¶] (a) On the power of any city or county or city and county to declare, prohibit, and abate nuisances. [¶] . . . [¶] (c) On the power of any state agency in the enforcement of administration of any provision of law which it is specifically authorized or required to enforce or administer."

In *Pacific Lumber*, the Supreme Court rejected a timber company's contention that the Forest Practice Act (§ 4511 et. seq.) precluded the Regional Water Quality Resources Control Board and the State Water Control Board (Water Boards) from imposing water quality monitoring requirements that the California Department of Forestry and Fire Protection (Department of Forestry) had deemed unnecessary in approving the company's timber harvest plan amendment. (*Pacific Lumber, supra,* 37 Cal.4th at p. 926.) Citing the savings clause contained in former section 4514, subdivision (c), the *Pacific Lumber* court reasoned, "In light of the Forest Practice Act's *express* disclaimer of any interference with agency responsibilities, and the *absence of any irreconcilable conflict between the savings clause and other provisions of the Forest Practice Act*, we cannot accept Pacific Lumber's argument that the act *implicitly* allocates to the Department of Forestry exclusive responsibility for protecting state waters affected by timber harvesting,

38

in derogation of the Water Boards' statutory prerogatives." (*Pacific Lumber, supra,* at p. 926, italics added.)

In the course of its ruling, the *Pacific Lumber* court emphasized that the case did not present a scenario in which the Department of Forestry and the Water Boards had issued orders that directly *conflicted* with each other:

> "We are not faced here with a situation in which it would be literally impossible for a timber harvester to simultaneously comply with conflicting directives issued by the Department of Forestry and the Water Boards. We trust that agencies strive to avoid such conflicts, and express no opinion here regarding the appropriate outcome in a case involving irreconcilable orders. (Cf. *State Personnel Bd. v. Fair Employment & Housing Com.* [(1985)] 39 Cal.3d 422, 442, fn. 20 [noting that 'any conflicts which may arise in this area can be resolved either by administrative accommodation between the two agencies themselves or, failing that, by sensitive application of evolving judicial principles'].)" (*Pacific Lumber, supra*, 37 Cal.4th at p. 936, fn. 5.)

In *Big Creek*, the Supreme Court concluded that a county ordinance that regulated the location of helicopter staging, loading, and servicing facilities associated with timber operations was not preempted by a provision of the Forest Practice Act (§ 4516.5, subd. (d)) that prohibited counties from "regulat[ing] the conduct of timber operations." (See *Big Creek, supra*, 38 Cal.4th at p. 1162.) The *Big Creek* court supported its preemption conclusion by citing the savings clause contained in former section 4514, subdivision (a). (See *Big Creek, supra*, at p. 1162 ["In the case of the helicopter ordinance, which County apparently enacted to address citizens' fears created by helicopters transporting multi-ton logs by air over or near their neighborhoods, and citizen concerns with throbbing and unbearable noise, the conclusion is buttressed by the fact that . . . the [Forest Practice

39

Act] . . . expressly contemplate[s] the survival of localities' power to abate nuisances endangering public health or safety"].)  The *Big Creek* court did suggest that the nuisance abatement savings clause did not entirely eviscerate the effect of the preemption provision in the statute, noting, "County concedes it lacks authority to prohibit timber removal by helicopters or to regulate the manner in which any such removal is conducted."  (*Ibid*; accord *Kanter v. Warner-Lambert Co.* (2002) 99 Cal.App.4th 780, 791 ["a savings clause should not be interpreted in such a way as to undercut or dilute an express preemption clause"].)

>    v.    *The savings clause of section 30005, subdivision (b) should not be interpreted so broadly as to authorize a local government to avoid the requirements of its local coastal program through a pretextual exercise of its nuisance abatement powers*

In interpreting the scope of section 30005, subdivision (b), we consider an issue not directly addressed in the cases discussed above, namely, whether the Legislature intended to authorize a local government to avoid the requirements of its local coastal program by merely declaring a nuisance and prescribing abatement measures, regardless of whether those measures are an artifice for avoiding those requirements.  For the reasons discussed below, we conclude that section 30005, subdivision (b) may not be so broadly interpreted.  In our view, if a trial court finds that a local government has abated a nuisance *for the specific purpose of avoiding its local coastal program obligations*, the local government is not acting within the scope of section 30005, subdivision (b).  We conclude that when a local government undertakes development that is directed at a true nuisance, and those abatement measures are narrowly targeted at abating the nuisance

40

(*Citizens, supra*, 196 Cal.App.4th at p. 1585), the declaration of the nuisance and the abatement measures must be undertaken in good faith, and not as a pretext for avoiding local coastal program obligations.

We begin with the language of the savings clause at issue. Section 30005, subdivision (b) clearly does not expressly permit a local government to avoid the requirements of its local coastal program through a *pretextual* exercise of its nuisance abatement powers. Despite the City's and Headlands's apparent recognition that section 30005, subdivision (b) should not be interpreted to permit a municipality to exercise its nuisance abatement powers for the specific purpose of avoiding complying with the municipality's own local coastal program, the City and Headlands suggest that this court should interpret the statute as stating that no provision of the Coastal Act is a limitation on the power of any city to declare, prohibit, and abate nuisances for any reason whatsoever. However, the statute is not so broadly worded.

The City and Headlands ask this court to infer from the lack of express language restricting the scope of a city's abatement powers preserved under section 30005, subdivision (b), that the Legislature intended for cities' abatement powers to be unrestricted. In support of this contention, the City and Headlands note that section 30005, subdivision (a) authorizes cities to adopt certain additional regulations "not in conflict with this act," while section 30005, subdivision (b) contains no such limitation. The City and Headlands suggest that by negative implication, the Legislature adopted section 30005, subdivision (b) primarily for the purpose of permitting cities to abate nuisances in ways that *are* in conflict with Coastal Act policies. Yet, even though the

41

Legislature intended to permit local governments to engage in legitimate nuisance abatement activities without a coastal development permit, we are not persuaded that the Legislature intended that section 30005, subdivision (b) authorize a city to evade its local coastal program obligations under the guise of nuisance abatement.

To begin with, this court has offered (albeit without considerable discussion), an interpretation of the statute that directly conflicts with this proposition.  (See *Conway v. City of Imperial Beach* (1997) 52 Cal.App.4th 78, 87 (*Conway*) [stating that through the enactment of section 30005, subdivisions (a) *and* (b), "the Legislature clearly intends that local governments retain authority to regulate land or water uses in the coastal zone when necessary to protect coastal resources.  *This authority exists so long as the regulations enacted are 'not in conflict' with the purposes of the Coastal Act*" (italics added)].)  Further, neither section 30005, subdivision (a) *nor* (b) suggests that the Legislature intended that a city be allowed to utilize its abatement powers in ways that conflict with Coastal Act policies when a court determines that the local government's abatement is a *pretext* for avoiding local coastal program obligations.

A careful comparison of the text of the savings clause at issue in this case with the clauses discussed in *Big Creek* and *Pacific Lumber*, suggests a second textual limitation on the scope of section 30005.  As adopted in 1973, former section 4514 of the Forest Practice Act stated in relevant part:

> "No provision of this chapter *or any ruling, requirement, or policy of the board* is a limitation on any of the following:
>
> "(a) On the power of a city or county or city and county to declare, prohibit, and abate nuisances."  (Italics added.)

42

Three years later, in 1976, in adopting section 30005, the Legislature used language nearly identical to that contained in former section 4514, but *narrowed* the textual scope of the savings clause by stating:

> "No provision of *this division* [i.e. the Coastal Act] is a limitation on any of the following:
>
> (b) On the power of any city or county or city and county to declare, prohibit, and abate nuisances."  (Italics added.)

The Coastal Act requires *local governments* within the coastal zone to adopt their *own* local coastal programs (§ 30500, subd. (a)),[22] and, after certification of such local coastal programs by the Commission, authorizes those governments to issue permits consistent within these local coastal programs (§ 30519, subd. (a)).  Thus, a strong textual argument can be made that the savings clause in section 30005, subdivision (b) does *not* preserve the authority of a city to exercise abatement powers as a means to avoid its *own* local coastal program because such local coastal programs are not "provision[s] of the [the Coastal Act]" (§ 30500).  To conclude otherwise would be to say that the Legislature intended that section 30005 be interpreted as broadly as former section 4514, notwithstanding the expressly narrower language in section 30005.  In any event, the fact that section 30005 specifically refers to the *Coastal Act* is consistent with our conclusion that in order to obtain injunctive or writ relief restraining the Commission from enforcing

_____

[22]    Further, unlike administrative regulations implementing a statute, which derive their authority from the statute (*Selby v. Department of Motor Vehicles* (1980) 110 Cal.App.3d 470, 474), it is clear that under the Coastal Act, *local governments* determine the content of such programs in the first instance.  (See § 30500, subd. (c).)

43

the Coastal Act, a municipality must demonstrate that it is not exercising its nuisance abatement powers for the purpose of avoiding the municipality's obligations under its own *local coastal program* in order to demonstrate that its abatement activities are within the savings clause in section 30005, subdivision (b).

In addition to the statutory text, the apparent purpose of section 30005, subdivision (b) supports a narrower interpretation of the statute. Section 30005, subdivision (b) preserves the authority of local governments to abate nuisances. Given that a nuisance is something that is "injurious to health, . . . offensive to the senses, . . . or interfere[s] with the comfortable enjoyment of life or property" (Civ. Code, § 3479), a local government's efforts to abate a nuisance will often be fully consistent with the Coastal Act's central purpose of " '[p]rotect[ing], maintain[ing], and, where feasible, enhanc[ing] and restor[ing] the overall quality of the coastal zone environment and its natural and artificial resources." (*Hines v. California Coastal Com.* (2010) 186 Cal.App.4th 830, 840.) It is for this reason that Headlands's citation to *Napa Valley Wine Train, Inc. v. Public Utilities Com.* (1990) 50 Cal.3d 370 (*Napa Valley*) is unpersuasive. In *Napa Valley*, the Supreme Court concluded that an exemption in the California Environmental Quality Act (CEQA) for projects that increased passenger rail services for rail lines already in use should be given effect, despite the fact that the project would have a significant impact on the environment. (*Napa Valley, supra,* at p. 377.) In rejecting an argument that the exemption should apply only to projects that would *not* have a significant impact on the environment, the *Napa Valley* court reasoned, "It is precisely to

44

avoid that burden for an entire class of projects that the Legislature has enacted the exemption." (*Id*. at p. 381.)

In *Napa Valley*, the entire *purpose* of the exemption at issue was to permit projects to be undertaken in a manner *contrary* to CEQA (i.e. to permit projects to be undertaken without the environmental review specified under CEQA). In this case, in contrast, despite the fact that the Legislature authorized cities to conduct legitimate nuisance abatement activities *without* a coastal development permit, there is nothing in the Coastal Act that suggests that the Legislature enacted section 30005, subdivision (b) for the specific *purpose* of ensuring that cities could abate nuisances in ways that *would conflict* with the Coastal Act's goals, including maximization of public access to the coast.

The context in which the nuisance abatement savings clause appears supports the conclusion that the Legislature likely envisioned that section 30005, subdivision (b) would most often be used by cities to abate nuisances in the coastal zone in ways that *further* the purposes of the Coastal Act. More specifically, the fact that the *other* provisions of section 30005 authorize actions that are generally taken in a manner *consistent* with the Coastal Act, suggests that the primary purpose of subdivision (b) is to make clear that the Commission does not have *exclusive* jurisdiction to take action to protect the coast, and that municipalities may act to legitimately abate a nuisance within the coastal zone without having to obtain a coastal development permit. (See, e.g., § 30005, subd. (a) [Coastal Act is no limitation on certain regulations concerning "activity which might adversely affect the resources of the coastal zone"]; § 30005, subd.

45

(c) [Coastal Act is no limitation on certain actions to "enjoin any waste or pollution of the resources of the coastal zone or any nuisance"].)

Further, construing the generic savings clause in section 30005, subdivision (b) to permit cities to adopt pretextual nuisance abatement measures would have the potential to undermine a host of other California environmental statutes that contain generic nuisance abatement savings clauses similar to section 30005, subdivision (b). (See e.g., § 2715 [mining]; Health & Saf. Code, § 5415, subd. (b) [sewage waste]; and Health & Saf. Code, § 41509, subd. (a) [air pollution].) For example, Health and Safety Code section 5411, which governs sewage waste, provides, "No person shall discharge sewage or other waste, or the effluent of treated sewage or other waste, in any manner which will result in contamination, pollution or a nuisance." Health and Safety Code section 5415, subdivision (b) states that no provision in the chapter governing sewage waste is a limitation on "[t]he authority of any city or county to declare, prohibit, and abate nuisances." Just as Health and Safety Code section 5415 cannot reasonably be interpreted as permitting a City to abate nuisance conditions at a landfill by discharging waste as a pretext for avoiding waste discharge obligations under Health and Safety Code section 5411, Public Resources Code section 30005 cannot reasonably be read to authorize a City to abate a nuisance in the coastal zone by authorizing development as a pretext for avoiding local coastal program obligations.

Excluding the pretextual use of nuisance abatement powers from the scope of the safe harbor of section 30005, subdivision (b) is also fully consistent with the narrow construction given the statute in *Citizens*. (See *Citizens, supra*, 196 Cal.App.4th at p.

46

1586 [acknowledging that it was adopting a "narrow construction" of section 30005, subdivision (b) and stating, "Given the breadth of conditions that can be deemed to constitute nuisances . . . , a contrary conclusion that exempted all projects involving some nuisance abatement from Coastal Act requirements would undo the statutory scheme"; accord *Big Creek, supra*, 38 Cal.4th at p. 1162 [declining to interpret savings clause as to permit city to take actions that would conflict with express preemption provision].)

Interpreting section 30005, subdivision (b) as not authorizing cities to abate nuisances in ways that are a pretext for avoiding Coastal Act policies is also consistent with the general rule that "[s]aving clauses are usually strictly construed" (*Sutherland, supra*, at § 47.12). This interpretation is also consistent with case law in which courts have refused to interpret savings clauses in a manner that would authorize activity that directly conflicts with the statutory scheme containing the savings clause. (See *Dowhal v. SmithKline Beecham Consumer Healthcare* (2004) 32 Cal.4th 910, 926 (*Dowhal*) ["The United States Supreme Court has *never* interpreted a savings clause so broadly as to permit a state enactment to conflict with a federal regulation scheme" (italics added)]; *Geier v. American Honda Motor Co.* (2000) 529 U.S. 861, 869 ["this Court has repeatedly 'decline[d] to give broad effect to saving clauses where doing so would upset the careful regulatory scheme established by federal law' [citation]"]; accord *Pacific Lumber, supra*, 37 Cal.4th at p. 936, fn. 5 [applying savings clause where application of clause would not result in "conflicting directives" by two agencies].) Although section 30005, subdivision (b) has been interpreted to permit local governments to engage in

47

nuisance abatement activities without having to obtain a coastal development permit (*Citizens, supra*, 196 Cal.App.4th at p. 1585), we decline to interpret the provision so broadly as to permit cities to exercise their nuisance abatement authority in a *pretextual* manner, to avoid local coastal program obligations.

The Commission's interpretation of section 30005, subdivision (b) is also consistent with several rules of statutory construction contained in the Coastal Act itself. (See § 30007.5 ["The Legislature further finds and recognizes that conflicts may occur between one or more policies of the division. The Legislature therefore declares that in carrying out the provisions of this division such conflicts be resolved in a manner which on balance is the most protective of significant coastal resources"] and § 30009 ["This division shall be liberally construed to accomplish its purposes and objectives"].) Such an interpretation is also consistent with the fact that " 'a fundamental purpose of the Coastal Act is to ensure that state policies prevail over the concerns of local government.' [Citation.]" (*Pacific Palisades, supra,* 55 Cal.4th at p. 794.)

Accordingly, we conclude that, where a city seeks a court order restraining the Commission from taking enforcement action against the city on the ground that the city is properly exercising its nuisance abatement powers under section 30005, subdivision (b), a court should conclude that the abatement is not within the scope of section 30005, subdivision (b) if it determines that the city's action in declaring a nuisance, or in prescribing the alleged abatement actions, is a pretext for avoiding its obligations under

48

the local coastal program.[23]  We emphasize that because most development within the coastal zone requires a permit (§§ 30103, subd. (a), 30600, subd. (a)), a trial court cannot conclude that a city is acting outside the scope of its nuisance abatement powers *merely* by finding that it is taking actions that are in conflict with the Coastal Act.  To do so would be to conclude that a City must obtain a coastal development permit *any time* it abates a nuisance in a coastal zone, contrary to the holding in *Citizens*.  (*Citizens, supra*, 196 Cal.App.4th at p. 1585 [concluding that a coastal permit is not required " '[w]here a local government properly declares a nuisance and requires abatement measures that are narrowly targeted at abating the declared nuisance . . . ' [citation]"].)  However, where a local government *improperly* declares a nuisance as a pretext for avoiding its own local coastal program obligations, section 30005 does not provide a safe harbor from the Commission's jurisdiction.

   c. *The trial court erred in ordering the Commission not to attempt to exercise jurisdiction over development mandated by the Nuisance Abatement Ordinance, without first determining whether the City's enactment of the ordinance was a pretext for avoiding the requirements of its local coastal program*

The trial court concluded that "[r]egardless of the merits of the Commission's arguments concerning the finding of a nuisance, . . . the Coastal Commission lacks

---

23 We reject the City and Headlands's contention that such an interpretation would violate the separation of powers doctrine, by permitting the Commission to "review[] the legal validity of the [Nuisance Abatement Ordinance]."  Our interpretation of section 30005, subdivision (b) does not authorize the Commission to review the legal validity of ordinance.  Rather, we interpret section 30005, subdivision (b) as requiring that a trial court not prevent the Commission from exercising jurisdiction over development mandated by an ordinance where the court finds that the local government adopted the ordinance as a pretext for avoiding the local government's local coastal program.

49

jurisdiction to adjudicate this matter and . . . such issues are reserved for adjudication by the courts."  The trial court also ruled that "the . . . Commission lacks jurisdiction under Coastal Act section 30005[, subdivision] (b) to place limitations on the enforcement of the Nuisance Abatement Ordinance."  The court issued a peremptory writ of mandate directing the Commission to "cease and desist from any actions to enforce or otherwise attempt to submit the City's Nuisance Abatement Ordinance to the jurisdiction of the . . . Commission."  Through these rulings, it appears that the trial court concluded that the City's mere declaration that it was exercising nuisance abatement powers pursuant to section 30005, subdivision (b) deprived the Commission of any jurisdiction over the development mandated by the Nuisance Abatement Ordinance.  Alternatively, the trial court may have intended to conclude that the Commission could assume jurisdiction over the development mandated by the Nuisance Abatement Ordinance only if the trial court were subsequently to invalidate the ordinance in the Surfrider Case.  In either instance, the court erred in granting a petition for writ of mandate restraining the Commission from exercising jurisdiction over the development mandated by the Nuisance Abatement Ordinance without first determining, *in the City's Case*, whether the City was acting properly within the scope of its nuisance abatement powers pursuant to section 30005, subdivision (b).[24]

---

[24]    The trial court was required to interpret section 30005, subdivision (b) without the benefit of any directly applicable appellate authority.  *Citizens* was decided after the trial court ruled in this case, and there are apparently no other cases on point.

50

Consistent with our interpretation of section 30005, subdivision (b) in part III.A.3.b., *ante*, prior to granting the City relief and ordering the Commission to refrain from exercising jurisdiction over development mandated by the Nuisance Abatement Ordinance, the trial court was required to determine whether there was an actual nuisance, and if so, whether "the development 'activity exceeds the amount necessary' [citation] 'simply to abate the nuisance.' [Citation.]" (*Citizens, supra*, 196 Cal.App.4th at p. 1585.) The trial court was also required to determine whether the City's enactment of the ordinance was a pretext for avoiding the requirements of its local coastal program. In the companion Surfrider Case, the trial court reviewed a considerable amount of evidence bearing on the issue of pretext and the scope of the abatement measures that the City enacted in the Nuisance Abatement Ordinance. For example, the trial court considered evidence pertaining to the conditions that allegedly support the nuisance declaration and the measures that the City claimed were necessary to abate the alleged nuisance. The trial court also heard evidence concerning whether the City's chosen abatement measures conflicted with the City's obligations under the local coastal program. The court was presented with evidence pertaining to provisions in the local coastal program concerning trail access, and evidence that the Commission had rejected a previous request from Headlands to be relieved of some of the requirements in the local coastal program pertaining to such access based on alleged geotechnical and engineering difficulties. The court also heard evidence that the City adopted the Nuisance Abatement Ordinance only after the Commission "demanded that the City revoke the hours and remove the gates."

51

Based on the trial court's statements in its order granting the petition for writ of mandate in the Surfrider Case, it appears that the trial court is likely to find on remand in this case that the City's enactment of the ordinance was a pretext for avoiding the requirements of its local coastal program,[25] and that the development mandated by the City exceeded the amount necessary to abate any actual nuisance.[26]  However, because the trial court did not consider these precise issues in the context of the City's writ petition/complaint, we conclude that the trial court should be afforded that opportunity in the first instance on remand, in accordance with our directions in part III.A.4., *post*.

4.    *Proceedings on remand*

In part III.A.2., *ante*, we concluded that the Commission lacked appellate jurisdiction pursuant to section 30625 to consider the validity of the development mandated by the Nuisance Abatement Ordinance.  The portion of the trial court's judgment and the preemptory writ of mandate declaring the Commission's May 13 actions invalid are therefore affirmed.

In part III.A.3., *ante*, we concluded that the trial court erred in determining that section 30005, subdivision (b) precludes the Commission from exercising jurisdiction over the development mandated by the Nuisance Abatement Ordinance without first determining whether City's enactment of the Nuisance Abatement Ordinance was a

25    At oral argument in this court, the City's counsel acknowledged that the trial court implicitly found in the Surfrider Case that the City's adoption of the Nuisance Abatement Ordinance was pretextual.

26    We again emphasize that we do not intend to suggest what the trial court *should* do on remand.

pretext for avoiding the requirements of its local coastal program. That portion of the trial court's judgment stating that the Commission lacks jurisdiction over the City's Nuisance Abatement Ordinance pursuant to section 30005, subdivision (b), and that portion of the trial court's peremptory writ of mandate ordering the Commission to "cease and desist from any actions to enforce or otherwise attempt to submit the City's Nuisance Abatement Ordinance to the jurisdiction of the . . . Commission" are reversed.

On remand, the trial court is directed to determine whether the City was acting within the scope of section 30005, subdivision (b) in adopting the Nuisance Abatement Ordinance.[27] In making this determination, the trial court shall decide whether the City's enactment of the Nuisance Abatement Ordinance was a pretext for avoiding the requirements of its local coastal program *and*, if the court determines that there is an actual nuisance, whether the development mandated by the Nuisance Abatement Ordinance exceeds the amount necessary to abate that nuisance. If the court determines that the City adopted the Nuisance Abatement Ordinance solely as a pretext for avoiding obligations under the local coastal program and/or that the development mandated by the Nuisance Abatement Ordinance exceeds the amount necessary to abate the nuisance, the court is directed to enter a new judgment in favor of the Commission. The court's judgment shall deny the City's request for a peremptory writ of mandate insofar as it

---

[27]   As the petitioner/plaintiff on the writ petition/complaint, the City shall bear the burden of proof on remand in establishing that it was acting within the scope of section 30005, subdivision (b).

53

seeks to prohibit the Commission from exercising jurisdiction over development that the court determines to be outside the scope of section 30005, subdivision (b).[28]

If the court determines that the City has established that it did *not* act enact the ordinance as a pretext to engage in development that would otherwise be subject to the Commission's jurisdiction, or that it did not mandate development in excess of that necessary to abate the nuisance, the court is directed to grant judgment in favor of the City and to issue a peremptory writ of mandate prohibiting the Commission from exercising jurisdiction over development mandated by the Nuisance Abatement Ordinance.

The trial court is free to determine the procedural manner by which it will address these issues, including whether to order supplemental briefing and/or to hold additional hearings.

B.      *The City's and Headlands's appeals*

In their appeals, the City and Headlands contend that the trial court erred in declaring the Nuisance Abatement Ordinance "invalid and void insofar as there was no properly declared nuisance and/or the manner of abatement was excessive."  Surfrider contends that the trial court properly determined that the Nuisance Abatement Ordinance lacks any rational basis.  In the alternative, Surfrider contends that the ordinance infringes on various constitutional rights.  For the reasons stated below, we elect to hold the City's

---

[28]     If the trial court enters judgment in favor of the Commission, the Commission will bear the burden of proof in any potential future proceedings to prohibit or limit development mandated by the Nuisance Abatement Ordinance.  (See fn. 27, *post*.)

and Headlands's appeals in abeyance, since the final resolution of the issues in the related consolidated case may moot the issues raised in the City's and Headlands's appeals.

In the Commission's appeal in the City's Case, we held that the trial court erred in concluding that section 30005, subdivision (b) precludes the Commission from exercising jurisdiction over the development mandated by the Nuisance Abatement Ordinance. We also determined that the case must be remanded for further proceedings that may, and likely will, permit the Commission to exercise jurisdiction over the development mandated by the Nuisance Abatement Ordinance. Further, to the extent that the Commission is permitted to exercise such jurisdiction, the Commission has made it clear that it intends to prohibit the development in question.[29]

Under these circumstances, it is likely that a final resolution of the issues in the City's Case will moot the controversy in the City's and Headlands' appeal in the Surfrider Case. In fact, the City essentially made this argument in the trial court, stating, "[I]f the Lead Action [i.e. the City's Case] is resolved in favor of the Commission, [Surfrider's] claims will be *moot*, since the Commission has already taken the action necessary to prevent the enforcement of the City's Ordinance." (See *Wilson v. Los Angeles County*

---

[29] In addition, although we have concluded that the Commission lacked jurisdiction *under section 30625* to attempt to prohibit such development (see pt. III.A.2., *ante*), there are other provisions of the Coastal Act that the Commission could utilize in the event the trial court concludes on remand that section 30005, subdivision (b) does not preclude the Commission from exercising jurisdiction. For example, pursuant to section 30810, the Commission may enter an order "to enforce any requirements of a certified local coastal program . . . or any requirements of this division which are subject to the jurisdiction of the certified program . . . under any of the following circumstances: [¶] . . . [¶] (3) The local government or port governing body is a party to the violation."

55

*Civil Service Com.* (1952) 112 Cal.App.2d 450, 453 ["although a case may originally present an existing controversy, if before decision it has, through act of the parties or other cause, occurring after the commencement of the action, lost that essential character, it becomes a moot case or question which will not be considered by the court"].)

Under these unusual circumstances, we exercise our discretion to hold the appeals in the related Surfrider Case in abeyance pending resolution of the issues on remand in the City's Case.  (See e.g., *People v. Bennett* (1998) 17 Cal.4th 373, 381 ["The Court of Appeal issued an order to show cause returnable before the Orange County Superior Court, and it ordered that the appeal be held in abeyance pending the outcome of the hearing on the order to show cause"]; *Eddins v. Redstone* (2005) 134 Cal.App.4th 290, 302, fn. 6 ["This court deferred consideration of the appeal plaintiffs filed from the trial court's ruling denying class certification, and that appeal will become moot upon the finality of this decision"]; *Mediterranean Exports, Inc. v. Superior Court of San Mateo County* (1981) 119 Cal.App.3d 605, 611 ["The matters pending on Mediterranean's related appeal . . . have been held in abeyance pending the disposition of its petition in this proceeding"].)

Holding the appeals in the Surfrider Case in abeyance has the virtue of permitting the potential resolution of these related matters without the need to decide the constitutional questions raised in the City's and Headlands's appeals.  (See, e.g., *Lyng v. Northwest Indian Cemetery Protective Ass'n.* (1988) 485 U.S. 439, 445 ["A fundamental and long-standing principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them"].)  Such an

56

approach also allows for the possibility that any future litigation over the validity of the Commission's exercise of jurisdiction over the development mandated by the Nuisance Abatement Ordinance will be unencumbered by what might well become essentially an advisory opinion from this court concerning the related, but distinct, issues raised in the City's and Headlands's appeals.[30]

Accordingly, we will hold the City's and Headlands's appeals in abeyance, pending a final resolution of the issues in the City's Case, including any future action taken by the Commission for the purpose of directing the City to cease and desist undertaking the development mandated by the Nuisance Abatement Ordinance.

IV.

DISPOSITION

With respect to D060260, the trial court's June 2, 2011 judgment and accompanying writ of mandate are affirmed insofar as the court concluded that the Commission's actions taken at its May 13, 2010 hearing are invalid and void. The trial court's June 2, 2011 judgment and accompanying writ of mandate are reversed insofar as the trial court concluded that the Commission lacks jurisdiction over the City's Nuisance

---

[30]    The trial court's resolution of the two cases demonstrates the extent of their interrelatedness. For example, notwithstanding the trial court's issuance of a peremptory writ of mandate in the City's Case *restraining the Commission from exercising jurisdiction over the development mandated by the ordinance*, the court's order in the Surfrider Case states, "To the extent the City—in response to this ruling—continues to maintain the gates and/or signage then *the Court believes the matter would more appropriately be in the jurisdiction of the Commission for further action*." (Italics added.) Holding the City's and Headlands's appeals in abeyance allows the issues of the Commission's jurisdiction over the development to be resolved in the first instance in the context of litigation concerning the City's petition/complaint against the Commission.

Abatement Ordinance pursuant to section 30005, subdivision (b) and directed the Commission to cease and desist attempting to exercise jurisdiction over development mandated by the ordinance. The matter is remanded to the trial court with directions to conduct further proceedings as outlined in part III.A.4., *ante*. Each party is to bear its own costs on appeal in No. D060260.

The City's and Headlands's appeals in No. D060369 are held in abeyance. Within 60 days of this opinion being final, the parties are each directed to file an application with this court informing this court of the status of the City's Case. Upon the consideration of such applications, this court will determine the appropriate manner by which to proceed in No. D060369.

_____

AARON, J.

I CONCUR:

_____

O'ROURKE, J.

BENKE, J., Dissenting.

I disagree with three aspects of the majority's opinion. First, the majority mischaracterizes the relief the City of Dana Point (the City) sought in its petition for a writ of mandate and complaint for injunctive relief. The face of the City's petition and complaint is quite clear: it only seeks a determination that under Public Resources Code[1] Code[1] section 30005, subdivision (b), the California Coastal Commission (the Commission) lacks the power to determine the validity of the City's nuisance ordinance. Nothing in the City's petition can be interpreted as requesting the trial court determine the ultimate question of whether the ordinance is valid.

Second, and more importantly, the majority improperly requires the City establish that its ordinance was valid. The City's ordinance is presumptively valid, and the City was not required to establish the validity of its ordinance before enforcing the separation of powers principles embodied in section 30005, subdivision (b). Rather, by its terms, section 30005, subdivision (b) plainly placed that burden on the Commission. I note the Commission could have brought a cross-complaint challenging the validity of the City's ordinance or joined the Surfrider Foundation's action (the Surfrider case), which directly challenged the validity of the nuisance ordinance. However, the Commission chose not to take either course.

As a practical matter, by depriving the municipalities of the presumption that their

---

[1]     All further statutory references are to the Public Resources Code.

1

nuisance ordinances are valid, the majority's opinion will require that municipalities either obtain the approval of the Commission before exercising the power expressly and unconditionally provided to them by section 30005, subdivision (b) or be prepared to litigate their right to declare and abate nuisances. That circumstance improperly infringes on the City's well-established constitutional and statutory prerogatives.

Third, I am baffled by the majority's unwillingness to address and dispose of the issues raised in the City's appeal from the judgment entered by the trial court in the Surfrider case. The City's appeal in the Surfrider case, on a fully developed record, presents what will no doubt appear to the parties and the public to be precisely the issue the majority are requiring the trial court revisit in the City's case against the Commission. Not only do considerations of judicial economy suggest that we consider and determine the validity of the City's ordinance at this point, but also the public's substantial interest in access to the beach at the Headlands will continue to be burdened with what the trial court has determined were unlawful limitations while the trial court and the parties are compelled to again address issues we could and should resolve in the Surfrider case.

We should affirm the judgment in the City's case against the Commission and directly address the merits of the issues presented in the Surfrider case.

I

The majority's statement that "[i]n sum, the City asked the trial court to rule that the City was legitimately exercising nuisance abatement powers under section 30005, subdivision (b) and that the Commission therefore lacked jurisdiction to restrict any

2

action that the City might take pursuant to those powers" is at direct odds with what the City asked for in its action against the Commission. In fact, the City only asked the trial court to determine that the Commission had no jurisdiction to determine the validity of its ordinance and therefore the trial court need not determine whether the nuisance ordinance was valid.[1]

I note that in moving for judgment on the pleadings, the City argued the Commission had no authority to review the validity of the nuisance and that instead only the courts have that power. In opposing the City's complaint and petition, the

---

[1]    In its declaratory relief action, the City alleged:
"55. There is an actual, present and continuing controversy between the City and the Coastal Commission in that the City contends the Coastal Commission lacks jurisdiction to take any action to place limitations on the establishment and enforcement of the Nuisance Abatement Ordinance, for the reasons set forth above. The Coastal Commission denies the City's contention, and, as set forth above, has announced its intention to take further administrative action against the City designed to limit and prevent the City's enforcement of the Nuisance Abatement Ordinance.
"56. It is appropriate and necessary, therefore, that the Court issue an Order declaring that:
    "a. the Coastal Commission lacks jurisdiction under Coastal Act section 30005(b) to place limitations on the enforcement of the Nuisance Abatement Ordinance;
    "b. the Coastal Commission lacks jurisdiction under [the] California Constitution, pursuant to the separation of powers doctrine, to adjudicate whether the City's adoption of the Nuisance Abatement Ordinance was a legitimate and proper exercise of the City's police power; and
    "c. the Coastal Commission lacked jurisdiction to proceed with the 'appeal,' and thus lacks jurisdiction to proceed with any subsequent actions based upon the 'appeal,' because the adoption of the Nuisance Abatement Ordinance did not require any City 'action taken . . . on a coastal development permit application.'"
In the City's prayer for relief, it asked for a declaration determining that the Commission lacks jurisdiction to: place limitations on enforcement of the nuisance abatement ordinance; adjudicate whether the nuisance abatement ordinance was a legitimate exercise of the City's police power; and proceed with the "appeal" the Commission acted upon.

3

Commission relied on the factual record developed in Commission proceedings to argue that the nuisance ordinance was arbitrary and capricious.  In responding to the Commission's factual presentation on the merits of the ordinance, the City stated:  "The issue in this case . . . is *not* whether the Commission's decision was supported by any (let alone substantial) evidence.  Rather, the issue in front of this Court is whether the Commission had the *legal* jurisdiction to act in the first place.  The Commission's factual evidence is irrelevant."  The City went so far as to assert not only that the Commission's factual presentation was irrelevant but that "[t]he factual evidence supporting the City's decision is likewise unrelated to the issue of whether the Commission's actions were in excess of its jurisdiction."[1]

---

[1]　　　This is largely the argument the City made in its briefs in this court in the Commission case.  I note the majority rely on what they believe was a concession by the City's counsel at oral argument that the City had asked for a declaration that the nuisance ordinance was valid.  Such a concession, if it was made, was erroneous, because, as I have explained, the City's complaint and petition contain no such request.  However, after listening to a recording of the oral argument, I am not at all certain that such a concession was ever intended by counsel at argument in this court.  The discussion of what was litigated in the City's action was as follows:

"Justice Aaron:  . . . What if the trial court in the Commission versus the City case, in determining whether there was a nuisance and whether the activities were limited to actual abatement, whether there was a legitimate nuisance and whether the remediation was actually abatement?

"City Attorney:  That case was never before the trial courts.  Nobody sued and said -- What happened is the Commission took the position they got to decide, and so we sued them saying you don't get to do that.  Surfrider sued and said it was a nuisance.  Nobody sued and said what you did exceeded nuisance and became development.

"Justice Aaron:  Didn't the City ask for a declaration that it was legitimately exercising its nuisance abatement powers?

"City Attorney:  Correct.

"Justice Aaron:  Wouldn't that be part of that analysis?

"City Attorney:  That question was never analyzed because the coastal --

"Justice Aaron:  It wasn't, but could it have been?

4

"City Attorney: It could've been. It was not. The Coastal Commission took the position that it got to decide, and I would encourage you to decide that question and publish an opinion. I think it's an important question, and you know our thought on that. We put that in our brief, that that court gets to decide.

"Justice Benke: If we conclude that they do get to decide, then where does that leave you?

"City Attorney: That the Commission gets to decide?

"Justice Aaron: Yes.

"City Attorney: I'd be sad. (laughter and some inaudible comments) In terms of this case, it would reverse the trial court's decision and, I'd have to think that one through. I'm not sure what the impact would be. I guess it would reverse the writ that was issued against the Commission and would send it back to the trial court for further proceedings.

"Justice Benke: I thought the trial court had made a conclusion. Maybe I'm wrong. I'd have to go back and look at the language again. That the trial court had made an actual determination that the manner of enforcing policing power was overbroad.

"Justice Aaron: But that was in the Surfrider case.

"Justice Benke: That was in Surfrider. Yeah, that's what I mean. I'm addressing Surfrider.

"City Attorney: Surfrider -- I'm sorry, I didn't mean to interrupt you.

"Justice Benke: No, I think it just got straightened out. I think you were originally addressing the Commission case.

"City Attorney: The Commission never sued saying we've ceded nuisance. They sued saying --

"Justice Aaron: Yeah, but the City did ask for a declaration that it was legitimately exercising its nuisance abatement.

"City Attorney: And the court said -- Surfrider said it wasn't a nuisance. The court agreed that it wasn't a nuisance. The court said it's a rational basis standard as to whether it was a nuisance or not. The question of is it nuisance or development, which is kind of the issue that the . . . case throws out there you were inquiring about before, would really be a factual inquiry, and that factual inquiry never occurred.

"Justice Benke: That's why I asked about the record. Where do we go for a record on that question?

"City Attorney: That question was never addressed. We certainly never argued it before the trial court because it never came up in the context of this case."

As I read these remarks, counsel makes it fairly clear that in the City's action against the Commission the validity of the ordinance was not litigated but that the issue was fully considered in the Surfrider action.

I also note that at oral argument, the Commission's counsel suggested if we affirm the trial court's order in Surfrider, the jurisdictional question we consider in the City's case would be moot.

The trial court agreed with the City and determined the Commission had no power to pass upon the validity of the ordinance.

Given this record, it is simply not fair to the City or the trial court to attribute to the City a claim it did not make.

## II

However, more important than the majority's mischaracterization of the relief the City requested, is the majority's alteration of the clear separation of powers set forth in section 30005, subdivision (b).

By its terms, section 30005 states: "No provision of this division *is a limitation* . . . : [¶] . . . [¶] (b) *On the power* of any city or county or city and county to declare, prohibit, and abate nuisances."[1] (Italics added.) In light of this provision, which expressly and unconditionally permits local regulation of nuisances, we cannot imply the Coastal Act nonetheless somehow limits or preempts the City's power to declare, prohibit and abate nuisances: "There can be no preemption by implication if the Legislature has expressed an intent to permit local regulation or if the statutory scheme recognizes local regulation." (*Delta Wetlands Properties v. County of San Joaquin* (2004) 121

---

[1] In light of *Pacific Palisades Bowl Mobile Estates, LLC v. City of Los Angeles* (2012) 55 Cal.4th 783, 794, 810-811 (*Pacific Palisades*), it is now clear a municipality's local coastal program is itself a provision of the Coastal Act. In *Pacific Palisades*, the fact a local coastal program was part of the Coastal Act meant that the provisions of a local coastal program were not preempted by another state law, Government Code section 66427.5. (*Pacific Palisades*, at pp. 810-811.) Here, because the City's local coastal program, including the prohibition on gates, is also a part of the Coastal Act, like all the other provisions of the Coastal Act, the program is subject to the limitations of Public Resources Code section 30005.

6

Cal.App.4th 128, 143, citing *People ex rel. Deukmejian v. County of Mendocino* (1984) 36 Cal.3d 476, 485.)

Although Public Resources Code section 30005, subdivision (b) expressly and without limitation preserves the traditional police power of municipalities over nuisances (see Cal. Const., art. XI, § 7; Gov. Code, § 38771), the majority's opinion substantially impairs that power. The impairment arises out of the majority's holding that as a condition of obtaining the protection expressly provided by Public Resources Code section 30005, subdivision (b), the City must show that its ordinance is valid and not pretextual. Nothing on the face of the Coastal Act places such a burden on a municipality, and important principles of municipal and constitutional law suggest that any burden with respect to the validity of a municipal nuisance ordinance rests with the Commission, not the municipality.

Initially, I note the City's adoption of the nuisance ordinance was presumptively valid. "In determining whether a particular ordinance represents a valid exercise of the police power, the courts 'simply determine whether the statute or ordinance reasonably relates to a legitimate governmental purpose.' [Citation.] Every intendment is in favor of the validity of the exercise of the police power, and even though a court may differ from the determination of the legislative body, the ordinance will be upheld so long as it bears substantial relation to the public health, safety, morals or general welfare." (*Ensign Bickford Realty Corp. v. City Council* (1977) 68 Cal.App.3d 467, 474.) Thus, "where no right of free speech or any other fundamental right is involved or presented . . . the

7

burden is upon the one who attacks an ordinance valid on its face and enacted under lawful authority, to prove facts to establish its invalidity." (*City of Corona v. Corona Etc. Independent* (1953) 115 Cal.App.2d 382, 384; see also Evid. Code, § 664 [presumption official duty has been regularly performed].)

Secondly, the specific power to declare and abate nuisances is provided to municipalities both by article XI, section 7 of the California Constitution, which recognizes that municipalities may make and enforce "all local, police, sanitary, and other ordinances and regulations not in conflict with general laws," and Government Code section 38771, which gives city legislative bodies the power to declare "what constitutes a nuisance." (See *City of Costa Mesa v. Soffer* (1992) 11 Cal.App.4th 378, 383.) Because a municipality's police power is inherent, rather than delegated from the state, our Supreme Court has been ""'reluctant to infer legislative intent to preempt a field covered by municipal regulation when there is significant local interest to be served that may differ from one locality to another."' [Citations.]" (*City of Riverside v. Inland Empire Patients Health & Wellness Center, Inc.* (2013) 56 Cal.4th 729, 744 (*City of Riverside*).)

In its quite recent decision in *City of Riverside*, the Supreme Court found no conflict between a local ordinance which declared that any operation of a marijuana dispensary could be abated as a nuisance and the express or implied provisions of the Compassionate Use Act (CUA; Health & Saf. Code, § 11362.5 et seq.) and the Medical Marijuana Program (MMP; Health & Saf. Code, § 11362.7 et seq.), which shield

8

individuals from criminal prosecution for possessing medical marijuana or operating a collective which dispenses it. (*City of Riverside*, *supra*, 56 Cal.4th at pp. 744-745.) In interpreting the CUA and MMP in a careful and restrained manner, which focused on their operative provisions rather than their far broader purposes, the court noted that: "''The common thread of the cases is that if there is a significant local interest to be served which may differ from one locality to another then the presumption favors the validity of the local ordinance against an attack of state preemption.'' [Citations.]" (*City of Riverside*, at p. 744.)

I think the majority here err in failing to interpret the California Environmental Quality Control Act (CEQA) in the careful and restrained manner employed by the Supreme Court in *City of Riverside* and, more importantly, in failing to give the City the benefit of the presumption that its ordinance was valid. In particular, the majority's use of the general overall goals of CEQA as grounds for limiting the City's historical police powers is incongruent with the deference *City of Riverside* requires that we give the City's exercise of those very same powers.

I do not by any means suggest that a municipality has unfettered power to declare a nuisance when it has no basis for doing so. Notwithstanding its constitutional, common law and statutory powers to abate nuisances, a municipality may not by a mere "'declaration that specified property is a nuisance, make it one when in fact it is not.' [Citation.]" (*Leppo v. City of Petaluma* (1971) 20 Cal.App.3d 711, 718.) However, while any affected party may certainly challenge the validity of an ordinance, assigning

9

the burden of proof to the appropriate party has tremendous practical implications. If, as the majority hold, a municipality must bear the burden of establishing the validity of a nuisance ordinance, as a practical matter the City must either obtain the concurrence of the Commission before acting or be prepared to bear the considerable expense of establishing the validity of its action rather than simply defending it. In short, the rule announced by the majority creates a substantial disincentive to exercise the inherent police power recognized in our constitution and expressly preserved by section 30005, subdivision (b).

As I noted at the outset, the Commission could have, but chose not to, bring a cross-complaint in the City's action against it, and it could have, but chose not to, join in Surfrider's action against the City. In litigating such claims, the Commission could have vigorously attacked the validity of the City's ordinance, but importantly consistent with the deference owed to the City's exercise of its police power, the Commission would have borne the burden of proof.

I also observe the Commission has plenary power over the City's adoption of a local coastal program. (*Pacific Palisades*, *supra*, 55 Cal.4th at p. 794.) Arguably, in light of the gates the City required under its nuisance powers, the Commission could have reconsidered its approval of the City's local coastal program and the power it gave the City to issue coastal development permits. However, in light of section 30005, the Commission may not directly interfere with the City's well-established and well-protected nuisance powers.

10

In sum, because the City was not required to show that its ordinance was valid, it was entitled to the relief the trial court provided to it under section 30005, subdivision (b). Thus, I would affirm the trial court's judgment in the City's action against the Commission.

## III

My third area of disagreement with my colleagues is their unwillingness to reach the City's appeal of the trial court's judgment in the Surfrider case. Rather than staying the City's appeal in the Surfrider case, I think it is imperative that we reach the merits of the City's appeal of the trial court's judgment in the Surfrider case.

As I noted at the outset, in the Surfrider case the trial court determined that the City's ordinance is invalid; that the gates required by the ordinance are unlawful because there was no evidence of a nuisance; and that City's use of gates to abate any nuisance was arbitrary and capricious. If the trial court was correct, the public's interest in unfettered access to the beach in the Headlands will continue to be impaired while (1) the trial court once again determines the precise issue it determined in the Surfrider case, and (2) we are once again presented with an appeal on the merits of the City's nuisance ordinance. I fail to understand what public or jurisprudential interest is served by such a multiplicity of proceedings.

_____

BENKE, Acting P. J.

11