Filed 4/6/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| DARBY T. KEEN, as Trustee, etc., | B307538 |
| Plaintiff and Respondent, | Los Angeles County Super. Ct. No. 19STCP02984 |
| v. | |
| CITY OF MANHATTAN BEACH et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, James C. Chalfant, Judge.  Affirmed.

Richards, Watson & Gershon, Quinn M. Barrow, Ginetta L. Giovinco and Marvin E. Bonilla for Defendants and Appellants.

Angel Law, Frank P. Angel and Talia E. Nimmer for Plaintiff and Respondent.

_____

This case is about getting a room near the beach. By law, public access to the beach is a California priority. The California Coastal Commission enforces this priority by reviewing amendments beach towns make in municipal laws affecting coastal areas. Amendments require approval. The legal question here is whether there *was* an amendment.

In 1994, the City of Manhattan Beach enacted zoning ordinances, which the Coastal Commission then certified. Did these old ordinances permit rentals of a residential property for fewer than 30 days? The popularity of Airbnb and similar platforms has made the question acute.

The trial court rightly ruled the City's old ordinances *did* permit short-term rentals. This means the City's recent laws against platforms like Airbnb indeed are amendments requiring Commission approval, which the City never got. We affirm. Our statutory references are to the Public Resources Code.

I

We begin with legal, factual, and procedural background. This section recaps the California Coastal Act, describes local battles over short-term rentals, and recounts the case's posture.

A

The California Coastal Act of 1976 defined the Coastal Commission's mission to protect the coast and to maximize public access to it. (§§ 30001.5, 30330.) We liberally construe the Act to achieve these ends. (*Greenfield v. Mandalay Shores Community Assn.* (2018) 21 Cal.App.5th 896, 898 (*Greenfield*).)

The Commission works with local governments to ensure they take adequate account of state interests. (§ 30004, subds. (a) & (b); *City of Dana Point v. California Coastal Com.* (2013) 217 Cal.App.4th 170, 186.)

In this endeavor, the Act's main tool is the local coastal program. (§ 30500 et seq.; *City of Chula Vista v. Superior Court* (1982) 133 Cal.App.3d 472, 489.) Each coastal government must develop one. (§ 30500, subd. (a).) Local coastal programs have two parts: the land use plan and the local implementing program. The latter consists of zoning ordinances, zoning maps, and other possible actions. (§§ 30512, subd. (a), 30513, subd. (a).) The Commission reviews the local coastal program. (§§ 30200, 30512, 30512.2, 30513.) If it conforms to the Act's policies, the Commission certifies the program. (§§ 30512, subd. (a), 30513, subd. (b).)

In accord with these provisions, the City submitted its local coastal program to the Commission years ago. The Commission certified the City's land use plan in 1981 and its local implementing program in 1994. This local implementing program included zoning ordinances.

Once the local program is approved, it can be amended, but the local government must submit amendments to the Commission for approval. Absent approval, amendments have no force. (§ 30514, subd. (a).)

Throughout this case, the City has not disputed it would need Commission approval to enact a *new* prohibition on short-term rentals within the coastal zone. That would be an "amendment." But the City has stoutly maintained there has been no amendment, because its *old* ordinances always prohibited short-term rentals. Keen disagrees, and that frames the issue in this case: whether the City amended its program when it clamped down on short-term rentals, or whether the prohibition was not an amendment because it merely continued the legal status quo.

3

B

We now recount how the City banned short-term rentals.

For quite some time, people rented residential units in Manhattan Beach on both long- and short-term bases. The City knew about the practice and occasionally got complaints about a rental property, including about one "party house" in 2005.

Things changed leading up to 2015. Online platforms like Airbnb became popular, which increased short-term rentals. The City had not received a "tremendous" number of complaints, but it sought an active stance on the issue.

After hearing from the public, the Council passed two ordinances "reiterating" the City's supposedly existing ban on short-term rentals. The Council claimed its existing ordinances, including those enacted with the local coastal program, already prohibited short-term rentals implicitly.

We call these the 2015 ordinances.

When the City Council enacted the 2015 ordinances, it resolved to submit the one about the coastal zone for Commission certification.

City staff met with Commission staff. The Commission staff, however, recommended the City allow at least some short-term rentals to facilitate visitor access to the coastal zone. Then, in 2016, the Commission wrote to all coastal cities, saying municipal regulation of short-term rentals would have to be in cooperation with the Commission. The Commission emphasized that "vacation rentals provide an important source of visitor accommodations in the coastal zone" and that blanket bans would rarely be appropriate.

After the Commission made clear its support for some level of short-term renting, the City withdrew its 2015 request for

4

Commission approval.  The City tells us its withdrawal was because the 2015 ordinance worked no change in the law and hence never required Commission certification.

The City Council continued to grapple with how to regulate short-term rentals.

In 2019, the Council adopted an ordinance creating an enforcement mechanism for its short-term rental ban.  This required platforms like Airbnb to tell the City who was renting out what.  The ordinance also prohibited platforms from collecting fees for booking transactions.

We call this the 2019 ordinance.

The 2019 ordinance had a pronounced effect:  by June 2019, short-term rentals dropped, in round numbers, from 250 to 50.  The ban was markedly, although not completely, effective.

In July 2019, the City hired Host Compliance, a company specializing in helping cities enforce short-term rental regulation.

Bewilderingly, the City tells us there is no evidence its ordinances reduced the number of short-term rentals in the City.  The record contradicts this.

C

Darby Keen owns property in the City's coastal zone.  He rented it on a short-term basis.  The City sent Keen a Notice of Violation on July 16, 2019.  Keen petitioned for a writ of mandate to enjoin the City from enforcing the 2015 and 2019 ordinances.

The trial court issued a 19-page single-spaced tentative decision:  a model of careful analysis.  The court noted what the City did not dispute:  the City would have to obtain Commission approval if it were to enact a *new* prohibition on short-term rentals.  The City's position, however, was the prohibition was not new but rather was to be found in its old zoning laws that the

Commission had approved years before. The court disagreed, ruling the City had not identified any zoning provision to support its conclusion that rentals for fewer than 30 days were barred but longer rentals were permitted. The court concluded the City was wrong to say it had always banned short-term rentals. Rather, the court ruled the ban was new, it was an amendment, and it thus required Commission approval, which it did not have. The court therefore enjoined enforcement of the ban on short-term rentals pending Commission approval.

The City appealed.

## II

The City's argument boils down to this: the trial court was wrong to think the City has always allowed short-term rentals. The trial court was right, however, and the plain language of the City's ordinances proves it.

Our review is independent. (*Berkeley Hills Watershed Coalition v. City of Berkeley* (2019) 31 Cal.App.5th 880, 896.)

## A

The trial court correctly interpreted the City's ordinances: they always permitted short-term, as well as long-term, residential rentals. The City's ban on short-term rentals thus amended the status quo. This amendment required Commission approval, which the City never got. So the City's ban was not valid.

The issue reduces to whether the City's old ordinances permitted short-term rentals. The following analysis demonstrates they did.

The City always has allowed people to rent apartments and homes in the City on a long-term basis. In other words, it always has been legal to live in Manhattan Beach as a renter. No one

6

disputes this. One would be rather surprised to discover a community anywhere that banned renting completely.

Because rentals that are *long*-term have always been permissible under the City's ordinances, however, the City has been forced to distinguish between *long*-term residential rentals the City allows and *short*-term residential rentals the platforms promote and the City dislikes. Unfortunately for the City, its old residential zoning ordinances contain no long-term/short-term distinction.

Absent some distinction in the law, then, the law must treat long-term rentals the same as short-term rentals. If long-term rentals are legal, so too are short-term rentals. The ordinances offer no textual basis for a temporal distinction about the duration of rentals. The City could have enacted a distinction like that, but it never did.

Because its ordinances say nothing about the duration of rentals, the City cannot credibly insist its ordinances permit long-term residential rentals but have always banned short-term rentals. That interpretation makes no sense.

The crucial text is ordinance A.08, which defines "Use Classifications" for the City's zoning code. One use is "Single-Family Residential," defined as "[b]uildings containing one dwelling unit located on a single lot." A second use is "Multi-family Residential," which is defined as "[t]wo or more dwelling units on a site." This ordinance contains a chart that shows the City permits both uses in residential areas.

In other words, it is legal to build a residential house or an apartment building in the City's residential zones. Once it is built, you can reside there. Anyone can. This all makes sense. It would be surprising if it were otherwise.

The reasonable interpretation of permitting a "Single-Family Residential" building in a residential area is that people are allowed to reside in that building, whether they are owners or renters.

Why, under the text of the ordinance, are renters allowed in?  Because residential renters are common in cities, as everyone knows, and nothing in the ordinance takes the unusual step of banning all renting in the residential areas of the City.

Use of the word "residence" does not imply some minimum length of occupancy.  (Cf. *People v. Venice Suites, LLC* (2021) 71 Cal.App.5th 715, 726 (*Venice Suites*) ["A 'residential building' is used for human habitation without regard to length of occupancy . . . ."]; *Greenfield*, *supra*, 21 Cal.App.5th at p. 899 [the city in question historically treated short term rentals as a "residential" activity].)

It is possible to reside somewhere for a night, a week, or a lifetime.  The City points to no legally precedented way to draw a line between the number of days that makes some place a "residence" and the number that shows it is not.  (Cf. *Venice Suites*, *supra*, 71 Cal.App.5th at p. 732 ["the dictionary definitions for apartment house do not indicate a required length of occupancy"].)

The same analysis applies to "Multi-family Residential," where the common form of a multi-family building is an apartment building.  Apartment dwellers commonly rent.

The City's zoning thus permits you to rent a house or an apartment in Manhattan Beach, which accords with common experience.  The City's zoning does not regulate how long your stay can be.

The City's proposed distinction between long- and short-term rentals—the former always allowed, and the latter always forbidden—has no textual or logical basis. The City thus loses this appeal as a matter of textual interpretation.

The City incorrectly argues short-term rentals are more similar to, and therefore fall under the definition of, "Hotels, Motels, and Time-Share Facilities." With our emphasis, the ordinances define these facilities as "[e]stablishments offering lodging on a weekly or less than weekly basis, and *having kitchens in no more than 60 percent of guest units*." The short-term rentals the City is trying to prohibit are of single- and multi-family residences in residential neighborhoods. Houses and apartments conventionally have kitchens. This argument is untenable.

The City asks us to take judicial notice of a 1964 ordinance that defines a hotel a particular way. The City argues we should import this definition into the ordinance in the local coastal program. This is illogical. The different definition from decades before cannot prevail over the definition enacted by the City and certified by the Commission in the ordinance at issue. The older document is not relevant. We deny this request.

The zoning ordinances certified by the Commission thus allow rentals of single- and multi-family residences in residential zones for any duration, including short-term rentals of the Airbnb variety. The City's new ban on short-term rentals was an amendment requiring Commission approval.

## B

The City's other arguments are invalid.

9

### 1

The City relies heavily on the principle of permissive zoning. It argues California has adopted this doctrine: zoning ordinances prohibit any use they do not permit. But the City's ordinances *do* permit short-term rentals in residential zones. That is the only reasonable interpretation of the ordinances, as we have shown. This interpretation is not an affront to permissive zoning.

### 2

The City argues we should defer to its reasonable interpretation of its own ordinances because it is the local agency with responsibility for implementing them. Our analysis does not involve or require deference. We give simple words their obvious meaning. Contrary interpretations are unreasonable.

### 3

The City notes recent California statutes, in 2019, characterized short-term rentals as commercial uses. The City says this shows that short-term rentals are inappropriate in residential zones. These state statutes, however, deal with different issues than the municipal ordinances here. The 2019 statutes are not germane.

### 4

The City argues the trial court erred in interpreting the Coastal Act to require it to provide short-term rentals in residential areas. This is incorrect. The key provision is the one requiring Commission approval of amended laws. The Commission has not required the City to allow short-term rentals. The Commission has not reviewed the City's ban because the City, incorrectly, has been maintaining its ban is

nothing new.  There was no erroneous interpretation of the Coastal Act.

5

The City argues Keen's reliance on *Kracke v. City of Santa Barbara* (2021) 63 Cal.App.5th 1089 is misplaced.  Our analysis does not involve *Kracke.*

**DISPOSITION**

We affirm the judgment and award costs to Keen.

WILEY, J.

We concur:

STRATTON, Acting P. J.

HARUTUNIAN, J.[*]

---

[*]     Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11